UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YUKSEL CELIKGOGUS**, *et al.*,       )<br>                                                                )<br>            Plaintiffs,                                    )<br>                                                                )         **06-CV-1996 (HHK)**<br>v.                                                              )<br>                                                                )<br>**DONALD RUMSFELD,** *et al*.,              )<br>                                                                )<br>            Defendants.                                )<br>                                                                ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS'
### NOTICE OF RELATED CASE AND MOTION TO STAY

Plaintiffs Yuksel Celikgogus, Ibrahim Sen, Nuri Mert, Zakirjan Hasam and Abu Muhammad respectfully submit this opposition to Defendants' Notice of Related Cases and Motion to Stay. Defendants have suggested that the instant case is related, pursuant to Local Civil Rule 40.5(b)(3), to Rasul v. Rumsfeld, No. 04-CV-1864 (RMU) (D. D.C.), which is currently on cross-appeals in the United States Court of Appeals for the D.C. Circuit, Case Nos. 06-5209, 06-5222. They have also moved to stay the case pending a decision by the D.C. Circuit in Rasul. As discussed below, Rasul and the instant case are not related under the criteria set forth in Local Rule 40.5. In addition, a stay is not warranted because defendants have not demonstrated a "clear case of hardship" in the absence of the stay.

### FACTUAL BACKGROUND

Plaintiffs have brought this action based on their detention and treatment at United States military bases in Bagram and Kandahar, in Afghanistan, and Guantánamo Bay. During their time in U.S. custody, which ranged from two years to four and a half years,

Plaintiffs were subjected to coercive interrogations and acts of physical, mental and religious abuse, including a confluence of acts amounting to torture. (Celikgogus Amended Complaint ("Compl.") ¶ 1.) They were prevented from practicing their religion freely, and were denied due process and access to legal counsel. (Id. ¶¶ 1-2.) Plaintiffs Sen and Mert repeatedly requested access to representatives of their government, but were nevertheless denied access to consular officials. (Id. ¶¶ 83, 93, 103, 119.) None of the plaintiffs have ever had any affiliation with or materially supported any terrorist group. (Id. ¶ 1.)

      Plaintiffs Celikgogus, Sen and Mert are Turkish citizens captured in Afghanistan or Pakistan by Afghans or Pakistanis in 2001 and transferred to U.S. custody. Plaintiffs Celikgogus and Sen were captured in Pakistan fleeing the U.S. bombing campaign in Afghanistan. After crossing the border into Pakistan, they and many others fleeing the fighting for their safety were surrendered by Pakistani villagers to Pakistani police. (Id. ¶ 53, 77.) Plaintiff Mert was abducted by armed Afghans in an Afghan border town after fleeing Turkey's severe economic crisis. He was transferred between different Afghan captors before being eventually transferred to U.S. custody. (Id. ¶¶ 98-99.) Plaintiffs Celikgogus, Sen and Mert were detained in Kandahar, Afghanistan for between three days and several weeks where they were sleep deprived, prevented from freely practicing their religion, subjected to coercive interrogations, and subjected to other physical and mental abuse including forced nudity, forced body cavity searches, mandatory stress positions and solitary confinement, intimidation with dogs, and kicks and beatings causing prolonged pain and injury. (Id. ¶¶ 39-44, 54-63, 78-84, 99-107.) In Kandahar, Plaintiff Sen was subjected to electric shocks during interrogation and Plaintiff Mert was subjected to severe physical abuse that knocked out four teeth. (Id. ¶¶ 82,

2

101.) Plaintiffs Sen and Mert repeatedly requested and were denied access to consular officials of their government. (Id. ¶¶ 83, 103.)

Plaintiffs Celikgogus, Sen and Mert were subsequently transported to the U.S. military base at Guantánamo in or around January 2002 where they were detained and subjected to further abuse and torture. (Id. ¶¶ 45-54, 64-72, 85-93, 108-19.) In Guantánamo, Plaintiffs Celikgogus, Sen and Mert were subjected to physical and mental abuse including forced nudity, forced body cavity searches, forced injections with unknown substances, forced stress positions, prolonged solitary confinement, sleep deprivation, exposure to extreme temperatures, light and sound manipulation, beatings, intimidation, sexual harassment and assault, prolonged "short-shackling", threats of abuse or death, and coercive interrogations. (Id.) They were subjected to religious abuse including desecration of the Koran, disruption of religious exercise, forced grooming and verbal abuse and humiliation. (Id.) Plaintiffs Sen and Mert continued to request access to consular officials, but these requests were denied. (Id. ¶¶ 93, 119.) Mr. Celikgogus and Mr. Sen were released from Guantánamo to Turkey in November 2003, and Mr. Mert was released to Turkey in April 2004. (Id. ¶ 4.) None of these Plaintiffs received any kind of judicial, administrative or military hearing the entire time they were in U.S. custody. (Id. ¶¶ 35, 39, 52.)

Plaintiffs Hasam and Muhammad are refugees from their home countries who were classified as non-enemy combatants by Combatant Status Review Tribunals (CSRTs) in Guantánamo, yet were detained for close to two years after this classification. (Id. ¶ 5.) Both were detained in Bagram, Afghanistan before their detention in Guantánamo; Plaintiff Hasam was additionally detained for approximately one month in Kandahar. (Id. ¶¶ 35, 39, 132.) Both

3

were eventually transferred to poverty-stricken Albania where they have little opportunity for family reunification, employment or the reconstruction of their lives.  (Id. ¶¶ 6, 145-47, 169-73.)

     Plaintiff Hasam is an Uzbek refugee who fled religious persecution in Uzbekistan and traveled to Tajikistan in early 2001 before being forcibly removed to Afghanistan.  (Id. ¶ 124.)  After being taken into U.S. custody in Afghanistan after the beginning of the U.S. bombing campaign, Mr. Hasam was detained first in Bagram and then in Kandahar.  During his detention in Bagram and Kandahar, Plaintiff Hasam was subjected to physical, mental and religious abuse including forced nudity, forced grooming, body cavity searches, sleep deprivation, forced stress positions, interference with religious practice and sexual humiliation and assault.  (Id. ¶¶ 125-32.)  In Bagram, Plaintiff Hasam was subjected to a severe beating, and subsequently was forced to undergo a medical operation without his consent and without being properly informed of its purpose.  (Id. ¶¶ 126-27.)  Mr. Hasam was transferred from Kandahar to Guantánamo in June 2002.  (Id. ¶ 132.)  In Guantánamo, Mr. Hasam was subjected to physical and mental abuse including forced nudity, forced body cavity searches, forced injections with unknown substances, forced stress positions, prolonged solitary confinement, sleep deprivation, exposure to extreme temperatures, light and sound manipulation, beatings, intimidation, sexual harassment and assault, prolonged "short-shackling", threats of abuse or death to himself and his family and coercive interrogations.  (Id. ¶¶ 45-52, 133-45.)  Mr. Hasam appeared before the CSRT in December 2004 (Id. ¶ 52, 141.), but was not informed until May 2005 that the CSRT had determined that he was not an enemy combatant.  (Id. ¶ 141.)  Mr. Hasam, nevertheless, remained in custody until November 2006 when he was transferred to Albania, where he is unemployed, without family or community and living in a refugee center.  (Id. ¶¶ 5, 145-47.)

4

Plaintiff Muhammad, an Algerian who had been living in Pakistan, had been officially recognized as a refugee by the United Nations High Commission for Refugees (UNHCR) in 1998. (Id. ¶ 13.) In May 2002, he was arrested at his home by Pakistani officials accompanied by Americans. (Id. ¶ 148.) Dr. Muhammad was subsequently taken into U.S. custody in Bagram, Afghanistan where he was subjected to physical, mental and religious abuse including forced nudity, forced grooming, body cavity searches, sleep deprivation, forced stress positions, threats of abuse or death, forcible medication and interference with religious practice. (Id. ¶¶ 35-38, 125-32.) He was transferred to Guantánamo in August 2002. (Id. ¶¶ 148, 156.) In Guantánamo, Dr. Muhammad was subjected to physical and mental abuse including forced nudity, forced body cavity searches, forced stress positions, prolonged solitary confinement, sleep deprivation, exposure to extreme temperatures, light and sound manipulation, beatings, intimidation, threats of abuse, and coercive interrogations. (Id. ¶¶ 45-52, 157-71.) In December 2004, after Dr. Muhammad had been at Guantánamo for well over two years, the CSRT held a hearing to determine whether he was an enemy combatant. (Id. ¶ 164.) Dr. Muhammad requested the presence of specific, named witnesses from the UNHCR who knew of or had granted his refugee status and who were regular employees of the agency and easily identifiable. Because the government refused to call witnesses on his behalf, Dr. Muhammad declined to participate in the hearing. (Id.) He did not learn until May 10, 2005 that the CSRT had declared that he was not an enemy combatant. (Id.) Notwithstanding this determination, Dr. Muhammad, like Mr. Hasam, remained in custody until November 2006 when he was released to Albania where he is unemployed, without family or community and living in a refugee center. (Id. ¶¶ 5, 13.)

Plaintiffs allege violations of the Alien Tort Statute, based on torture, prolonged arbitrary detention, and cruel, inhuman or degrading treatment or punishment; treatment in violation of the Geneva and Vienna Conventions; violations of their rights under the First and Fifth Amendments to the United States Constitution; violations of the Religious Freedom Restoration Act; and claims under the Federal Civil Rights Act, 42 U.S.C. § 1985 (3), for conspiracy to deprive Plaintiffs of their rights under U.S. law motivated by invidious discrimination on the basis of Plaintiffs' religion. (Id. ¶¶ 189-241.) Plaintiffs bring this case against fifteen named defendants and Does 1-100 who were directly or indirectly involved in the abuses suffered by Plaintiffs and/or who have exercised command responsibility over, conspired with, and/or aided and abetted subordinates, or persons acting in concert with the U.S. officials, to commit the abuses suffered by Plaintiffs at Bagram, Kandahar or Guantánamo between November 2002 and November 2006. (Id. ¶ 6.)

Another case brought by former Guantánamo detainees, Rasul v. Rumsfeld, No. 04-CV-1864 (RMU) (D. D.C.), was filed with this Court in October 2004 and assigned to Judge Urbina.[1] The four plaintiffs in Rasul are all citizens of the United Kingdom. (Rasul Complaint ("Rasul Compl.") ¶¶ 2, 3.) Three of the Rasul plaintiffs were first detained by a "warlord" in Northern Afghanistan before being transferred to U.S. custody in Kandahar. (Rasul Compl. ¶ 2.) The fourth Rasul plaintiff was initially imprisoned by the Taliban before being transferred to U.S. custody and detained in Kandahar. (Rasul Compl. ¶ 3.) All of the Rasul plaintiffs were transferred from Kandahar to Guantánamo in January and February 2002. (Rasul Compl. ¶ 65.)

---

[1] Defendants invoke Plaintiffs' counsel's previous representation that a "prior incarnation of this case," since voluntarily dismissed, was related to Rasul as support for their position that this case is likewise related. Celikgogus v. Rumsfeld (docket number 12) at 2. However, the case to which Defendants refer included only one Plaintiff, different defendants and causes of action, a different time period and fundamentally different legal and factual circumstances. See Celikgogus v. Rumsfeld, No. 05-CV-2480 (D. D.C.). Moreover, Rasul is currently on cross-appeals before the D.C. Circuit. It is no longer before this Court.

After more than two years at Guantánamo, they were released to their home country, the United Kingdom, in March 2004.  (Rasul Compl. ¶ 65, 137.)  The Rasul plaintiffs experienced torture and other violations of their rights under U.S. and international law while in U.S. custody in Kandahar and in Camps X-Ray and Delta of Guantánamo.  (Rasul Compl. ¶ 4.)  None of the plaintiffs in Rasul were detained in Bagram, underwent a CSRT or were detained after 2004.

The Rasul complaint alleges claims under the Alien Tort Statute, the Geneva Convention, the Fifth and Eighth Amendments to the U.S. Constitution, and the Religious Freedom Restoration Act.  Unlike the instant action, Rasul does not involve claims under the Vienna Convention, the First Amendment to the U.S. Constitution or the Federal Civil Rights Act.  Since Rasul was filed, Judge Urbina upheld the claims under the Religious Freedom Restoration Act, but dismissed the remaining claims.  See Rasul v. Rumsfeld, 414 F. Supp. 2d 26 (D.D.C. 2006); Rasul v. Rumsfeld, 433 F. Supp. 2d 58 (D.D.C. 2006).  These decisions are currently pending on cross-appeals before the U.S. Court of Appeals for the District of Columbia Circuit.  Thus, no claims asserted in Rasul are currently pending before this Court.  Id. (docket number 35) (final order).

This case differs from Rasul v. Rumsfeld in several critical ways.  First, it names five plaintiffs from diverse countries, with the corresponding factual allegations unique to each plaintiff's experience in U.S. custody.  Crucially, this case includes two plaintiffs detained as non-enemy combatants for more than two years after both their non-enemy combatant determination and the Supreme Court's decisions in Rasul v. Bush, 542 U.S. 507 (2004) and Hamdi v. Rumsfeld, 542 U.S. 507 (2004).  Second, it names five additional defendants, not named in Rasul, including both those directly responsible and those with command responsibility for the injuries suffered by Plaintiffs.  Third, it alleges causes of action not present in Rasul,

7

including those based on the Vienna Convention, the First Amendment and the Federal Civil Rights Act, 42 U.S.C. §1985 (3).

Defendants now seek to have this case reassigned to Judge Urbina on the basis that it is related to Rasul. Further, Defendants seek to stay the case pending the Circuit Court's decision in Rasul either because the current case is related to Rasul, or because a stay is warranted by the "efficient administration of justice." For the reasons set forth below, these requests should be denied.

## LEGAL ARGUMENT

### I.      The Instant Case Is Not "Related to" Rasul.

Pursuant to Local Rule 40.5, a pending civil case is "related" to another pending case if the cases (i) relate to common property, (ii) involve common issues of fact, (iii) grow out of the same event or transaction, or (iv) involve a patent infringement. LCvR 40.5(a)(3); Dale v. Executive Office of the President, 121 F. Supp. 2d 35, 37 (D. D.C. 2000). A pending civil case is "related" to a case no longer pending in the District Court if it (1) involves the "same parties;" and (2) relates to the "same subject matter." LCvR 40.5(a)(4). The party seeking reassignment under Rule 40.5 bears the burden of showing that the cases at issue are related under one of these provisions. Dale, 121 F. Supp. 2d at 37. As discussed below, the two cases at issue here – the instant case and Rasul – are not related under either provision of Local Rule 40.5.[2]

The instant case and Rasul are not related pursuant to Local Rule 40.5(a)(4) because they do not involve the same parties. As set forth above, the plaintiffs in the instant case are entirely different from the plaintiffs in Rasul. There is no overlap of plaintiffs whatsoever.

---

[2] Because Rasul is currently on cross appeals in the D.C. Circuit, it is not clear to Plaintiffs which provision of Rule 40.5 applies to the determination of whether the cases are related. Ultimately, however, it is irrelevant

8

In addition, the amended complaint in the instant action names six defendants not named in Rasul. Thus, the defendants are not the same, although there is some overlap.

The instant case and Rasul are not related pursuant to Local Rule 40.5(a)(3) because they involve different factual and legal issues. As set forth above, this case is factually distinct from the Rasul case. It involves different plaintiffs, captured under different circumstances, held for different periods in different places. The circumstances of each plaintiff's arrest, the justification for his detention, the procedures and outcome of his CSRT and his treatment during detention form a distinct factual matrix that is unique to this proceeding.[3] (See Compl. ¶¶ 53-173.) None of these specific facts is at issue in, or even relevant to, the Rasul case.

In addition, the factual circumstances and causes of action alleged in the instant case present legal issues distinct from those presented in Rasul. The Rasul plaintiffs had all been released prior to the Supreme Court's decision in Rasul v. Bush, which held that district courts have jurisdiction to hear Guantánamo detainees' habeas petitions challenging their detention, as well as the Court's decision in Hamdi v. Rumsfeld, holding that U.S. citizen enemy combatants have a right to due process and legal counsel. This weighed heavily in Judge Urbina's conclusion that the Rasul defendants were entitled to qualified immunity for constitutional violations that they inflicted on the plaintiffs. See Rasul, 414 F. Supp. 2d at 44. Thus, the particular time frame of Mr. Hasam's and Dr. Muhammad's period of detention, and their

---

which provision is applied, because under either standard, the cases are not related.

[3] For example, the Complaint alleges that Mr. Celikgogus was violently forced awake and abused by an Emergency Reaction Force ("ERF") team (Compl. ¶ 70), Mr. Sen was subjected to electric shocks from a generator (id. ¶ 82), Mr. Mert lost four teeth as a result of a brutal beating (id. ¶ 101), Mr. Hasam was forced to undergo a medical operation for an unknown reason (id. ¶ 127), and Dr. Muhammad was denied treatment for dental problems, resulting in three of his teeth rotting and falling out (id. ¶ 163).

9

particular status as non-enemy combatants during that period, will require a court to evaluate novel factual and legal issues not implicated in Rasul.

The non-enemy combatant status of Plaintiffs Hasam and Muhammad raises issues of first impression as to whether their continued detention was authorized by Congress under the Authorization for Use of Military Force, 115 Stat. 224 ("AUMF").  See Hamdi v. Bush, 542 U.S. at 519 (plurality opinion) (concluding that Congress authorized the detention of "enemy combatants" when it passed the AUMF).  It additionally has implications for their rights under the U.S. Constitution.  See generally id. (discussing constitutional implications of enemy combatant status).

This case also raises the novel question of the scope of protections under the Vienna Convention on Consular Relations, Aprl. 24, 1963, TIAS 6820, 21 U.S.T. 77, 596 U.N.T.S. 261.  Art. 36 of the Vienna Convention mandates that the "receiving State," here the United States, shall grant consular officials the right to visit a national of the "sending state" who is in prison, custody or detention.  Plaintiffs Sen and Mert repeatedly requested access to representatives of their home government, Turkey, and were denied this access.  The United States Court of Appeals for the Seventh Circuit recently has ruled that this provision of the Vienna Convention – the right of consular notice and assistance – confers "individual rights on detained nationals" and is self-executing.  Jogi v. Voges, 2007 WL 730550 at *7, *11 (7th Cir. Mar. 12, 2007).  According to this reasoning, the court's "jurisdiction is secure" under 28 U.S.C. § 1331.  Id. at 3.  Thus, according to the Jogi court, a detainee has a legally enforceable right regarding the violation of his right of access to consular officials.  This decision raises added and persuasive support for a claim not present in Rasul.  This case will additionally require an

evaluation of claims under the First Amendment and claims under the Federal Civil Rights Act (See Compl. ¶¶ 212-16; 217-221; 238-41.) None of these causes of action was alleged in Rasul.

This Court has consistently rejected "related case" suggestions where, as here, there are significant factual and legal differences between the two cases. For example, in Keepseagle v. Glickman, 194 F.R.D. 1, 3 (D. D.C. 2000), the court held that a case brought by Native American farmers alleging discrimination by the Department of Agriculture and a case brought by African American farmers alleging discrimination against the same defendant did not "involve common issues of fact" under Rule 40.5, even though the plaintiffs in both cases alleged that they were injured from the same policies and in the same manner. Similarly, in Stewart v. O'Neill, 225 F. Supp. 2d 16, 20 (D. D.C. 2002), the court concluded that a case alleging discrimination against African-American agents at the Bureau of Alcohol, Firearms and Tobacco and a case alleging discrimination against Hispanic agents at the U.S. Customs Service did not "involve common issues of fact," even though both agencies were governed by the same management policies issued by the Department of Treasury and all plaintiffs alleged the same types of discriminatory and retaliatory practices, procedures, and policies. See also Howard v. Gutierrez, 405 F. Supp.2d 13 (2005) (finding cases not related under Rule 40.5 where the cases involved distinct legal claims).

At the heart of Rule 40.5 is the interest in promoting judicial efficiency, and this Court's strict application of that rule recognizes that the efficiency gains from reassignment are limited where two cases involve factual issues requiring separate discovery and distinct legal issues requiring separate analysis. Here, there is no efficiency to be gained. First, Rasul is not currently in this Court, and thus the court cannot consolidate the cases. Second, the distinct

11

factual allegations in this case will require substantial discovery that is entirely independent of the discovery required in Rasul.

In light of this Court's decisions in Keepseagle and Stewart, the fact that plaintiffs in both this case and Rasul are Guantánamo detainees who were harmed by government officials and employees is not sufficient to justify reassignment under Rule 40.5. See Keepseagle, 194 F.R.D. at 3; Stewart, 225 F. Supp. 2d at 20. Moreover, reassignment under these circumstances would, as a practical matter, undermine this Court's interest in an equal and fair distribution of cases among judges – one of the primary goals of the general case assignment system under Rule 40.3. More than 700 men have been detained at Guantánamo since January 2002. If Defendants were correct that this case and Rasul are related under the Local Rules, virtually any case filed by one of those 700 detainees alleging civil and constitutional rights violations would necessarily be related to Rasul. As this Court noted in Tripp, "to permit such an interpretation of the related case rule would undermine the important goals of [Rule] 40.3." Tripp, 196 F.R.D. at 202.

### II. No Stay Is Warranted because Defendants Have Not Demonstrated a "Clear Case of Hardship."

Defendants' motion to stay this case pending the Court of Appeals' decision in Rasul should be denied because Defendants have not met their burden of showing that they will suffer a "clear case of hardship" if this action proceeds.

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Landis v. N. Am. Co., 299 U.S. 248, 255 (1936). Accordingly, parties seeking a stay must make out a "clear case of hardship or inequity" from going forward if there is "even a fair possibility" that

12

the stay would work damage to the other party.  Id.  See also id. at 256 ("[T]he burden of making out the justice and wisdom of [a stay] lay heavily on petitioners.").

There is much more than "a fair possibility" that a stay of this case would harm Plaintiffs.  A stay interferes with Plaintiffs' rights to seek redress for their grievances, and the injuries they have suffered as a result of the physical, mental and religious abuse they experienced in U.S. detention, without undue delay.  This result is particularly problematic in light of the fact that the Plaintiffs were in U.S. custody, beginning in late 2001 and early 2002 and were subject to the systematic deprivation of their rights during the entire period of their detention, lasting from two to over four years.[4]  Throughout Plaintiffs' detention, Defendants went to great lengths to deny them access not only to any legal recourse, but to legal counsel as well.  Indeed, in light of their past behavior, Defendants' purported justifications for this motion ring hollow; it is simply hard to believe that this motion represents anything other than Defendants' continued determination to deny Plaintiffs their day in court.  Defendants have acted with impunity for their actions for long enough; this latest attempt to obstruct and delay justice should not be permitted.

Furthermore, Defendants have utterly failed to make out the "clear case of hardship" required to justify a stay.  Id. at 255.  Rather than demonstrating any real hardship they would suffer from proceeding with this action, Defendants merely complain that they would be required to litigate, and possibly revisit, similar issues in both this action and Rasul.  (Defendants' Motion to Stay at 3.)  The Court may consider the fact that Defendants are represented here by lawyers of the Department of Justice.  Defendants have not argued, nor

---

[4]In light of the fact that Defendants are largely responsible for secreting the information required to substantiate the complaint in this action, they are in a peculiar position to argue that Plaintiffs have unduly delayed in seeking to prosecute their case.  Moreover, Defendants completely ignore the fact that two of the plaintiffs in this action – Mr. Hasam and Dr. Muhammad – were released from Guantánamo as recently as November 2006 and

could they, that it is a "rare circumstance" for the federal government – with its vast legal department – to defend two lawsuits at the same time.  Id.  While being required to defend two actions which may have some similarities, but which have many material differences, as enumerated *supra*, may be an *inconvenience* to Defendants, it is a far cry from the type of hardship required to justify a stay.

The D.C. Circuit explicitly has rejected Defendants' argument that a stay is warranted due to the mandate of judicial efficiency that might result from delaying this action pending a decision by the D.C. Circuit of the Rasul v. Rumsfeld appeal.  In Dellinger v. Mitchell, the court specifically held that such an interest in "economy" is insufficient to warrant a stay, for "[i]t would support a district court stay of proceedings in a case whenever the same question is involved before another court in litigation not involving the parties protesting the stay."  442 F.2d 782, 787 (D.C. Cir. 1971).  Moreover, Dellinger recognized that, particularly on issues of national importance, the judicial system could indeed *benefit* from the different perspectives provided by more than one lower court opinion.  See id. at 787-88.

---

joined this action only four months later.

## CONCLUSION

For the reasons set forth above, Defendants have not met their burden of demonstrating that this case is related to <u>Rasul</u> under Rule 40.5(a)(3) or (a)(4), or that a stay is appropriate in this case. Defendants' related-case notice should be rejected and their motion for a stay should be denied.

Dated: April 3, 2007

                                        Respectfully submitted,

                                        <u>/s/ Shayana Kadidal</u>
                                        Shayana Kadidal [D.C. Bar No. 454248]
                                        William Goodman
                                        Patty Blum
                                        Michael Ratner
                                        CENTER FOR CONSTITUTIONAL RIGHTS
                                        666 Broadway, 7th Floor
                                        New York, NY 10012
                                        Tel:  (212) 614-6424
                                        Fax:  (212) 614-6499

**Certificate of Service**

    I, Shayana Kadidal, certify that on April 3, 2007, I caused the foregoing Opposition to be filed electronically on the Court's ECF system. Parties may access this filing through the Court's CM/ECF System.

Dated: April 3, 2007

                                                      /s/

                                       Shayana Kadidal [D.C. Bar No. 454248]
                                       CENTER FOR CONSTITUTIONAL RIGHTS
                                       666 Broadway, 7th Floor
                                       New York, NY  10012-2317
                                       Ph: (212) 614-6438
                                       Fax: (212) 614-6499