IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| YUKSEL CELIKGOGUS, et al., | ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    No. 06-CV-1996 (HHK) <br> ) |
| DONALD RUMSFELD, et al., | ) <br> ) |
| Defendants. | ) <br> ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
NOTICE OF RELATED CASE AND MOTION TO STAY**

In their notice of related case and motion to stay, defendants, Donald Rumsfeld, Richard Myers, Geoffrey Miller, James T. Hill, Michael E. Dunlavey, Jay Hood, Michael Lehnert, Nelson J. Cannon, and Terry Carrico, demonstrated that this case should be reassigned to the Honorable Ricardo M. Urbina as related to Rasul v. Rumsfeld, No. 04-CV-1864 (RMU) (D. D.C.), and then stayed pending the outcome of the consolidated appeals in that case. Despite plaintiffs' current opposition to these filings, plaintiffs' counsel previously agreed that this is exactly how this case should proceed.[1] In any event, as discussed below, plaintiffs have failed to articulate any material difference between this case and Rasul or refute the several compelling reasons for entering a stay in this case – namely, that the appellate decision in Rasul will largely dictate how this case should proceed (if at all), that this Court has entered similar stays in analogous circumstances, and that plaintiffs would not be prejudiced by a stay.

---

[1] As documented in a letter dated October 5, 2006, from defense counsel to plaintiffs' counsel, the latter offered to withdraw the complaint in Celikgogus v. Rumsfeld, No. 05-CV-2480 (RMU) (D. D.C.), refile it as a new case related to Rasul, and then file a motion for a stay of proceedings pending the appeal in Rasul. See Exh. A.

**DISCUSSION**

I.  **THIS CASE AND <u>RASUL</u> ARE RELATED BECAUSE THEY INVOLVE COMMON ISSUES OF FACT**

Under Local Civil Rule ("LCvR" or "Local Rule") 40.5, two cases are deemed related if they "involve common issues of fact." LCvR 40.5(a)(3)(ii).[2] This case and <u>Rasul</u> easily pass this test. Defendants' notice of related case describes how all of the plaintiffs in both cases are foreign nationals who were detained by United States military forces in Afghanistan in late 2001 or early 2002, transported to the United States Naval Base at Guantánamo Bay Naval Station, Cuba ("Guantánamo"), subjected to what they claim was unlawful treatment while detained, and then released. Both cases also name many of the same defendants, all of whom are (or were at the time) officials of the Department of Defense and United States Armed Forces and are being sued in their individual capacity for monetary damages, based on the theory that they were responsible for devising, approving, and implementing policies, or acquiescing in various acts, that allegedly caused plaintiffs' injuries. Finally, both cases rely on practically identical causes of action, including claims under the Alien Tort Statute, 28 U.S.C. § 1350, for "prolonged arbitrary detention," "cruel, inhuman or degrading treatment or punishment," and "torture"; claims for violating the Geneva Conventions; claims for violating the due process clause of the Fifth Amendment; and claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb <u>et seq.</u> <u>Compare</u> <u>Celikgogus</u> Am. Compl. Counts I, II, III, IV, VII, and VIII <u>with</u> <u>Rasul</u> Compl. Counts I, II, III, IV, VI, and VII. Indeed, many of the allegations underlying

---

[2] Because defendants have invoked only the "common issues of fact" provision of Local Rule 40.5 in their notice of related case, plaintiffs' discussion of Local Rule 40.5(a)(4), <u>see</u> Pl. Opp. at 8-9, which deals with cases involving the same parties, is beside the point.

these causes of action in the two complaints are verbatim.  Compare Celikgogus Am. Compl. ¶¶ 201-05, 208-10, 223-29, 232-36 with Rasul Compl. ¶¶ 174-78, 181-83, 193-200, 204-08.

      Plaintiffs do not, because they cannot, dispute any of this.  Instead, they make much out of superficial and immaterial distinctions between the cases.  For example, plaintiffs state that their case and Rasul do not involve common issues of fact because they are brought by "different plaintiffs, captured under different circumstances, [and] held for different periods in different places."  Pl. Opp. at 9.  Local Rule 40.5(a)(3)(ii), however, requires only that the two cases involve "common issues of fact," not the exact same plaintiffs and exact same facts.  That, after all, is the purpose behind Local Rule 40.5(a)(4), which states that cases are related if they "involv[e] the same parties and relat[e] to the same subject matter."  By any reasonable definition, this case and Rasul involve common issues of fact because they both are brought by similarly situated plaintiffs – non-resident aliens allegedly detained by United States military forces in Afghanistan, transferred to Guantánamo, and eventually released – all of whom claim they were subject to similar forms of mistreatment, for which they blame many of the same defendants under many of the same theories of relief.  This is presumably why plaintiffs' counsel identified this case's predecessor, Celikgogus v. Rumsfeld, No. 05-CV-2480 (RMU) (D. D.C.), as related to Rasul when it was first filed.

      Plaintiffs then devote most of their attention to identifying legal issues in their case that they say are distinct from those in Rasul.  But under the terms of Local Rule 40.5(a)(3)(ii), cases need only involve common issues of fact, not law, to be related.  Even so, this case and Rasul unmistakably present common issues of fact and law, as just discussed.  Any arguments plaintiffs make to the contrary, as explained below, rely on distinctions without a difference.

Along these lines, two of the plaintiffs in this case, Zakirjan Hasam and Abu Muhammad, point out that they, but none of the plaintiffs in Rasul, were detained after the Supreme Court's decisions in Rasul v. Bush, 542 U.S. 466 (2004), and Hamdi v. Rumsfeld, 542 U.S. 507 (2004). From this, they seem to imply that these cases clearly established, for qualified immunity purposes, at least some of the constitutional rights upon which they base their claims. See Pl. Opp. at 9-10. Not only does this argument ignore the other three plaintiffs in this case who allege they were released before the Supreme Court issued its opinions in those two cases, just like all the plaintiffs in Rasul, but it is flawed even as to plaintiffs Hasam and Muhammad.

In Rasul and Hamdi, the Supreme Court held, respectively, that federal courts have jurisdiction to entertain writs of habeas corpus filed by aliens detained at Guantánamo and that an American citizen detained as an enemy combatant within the United States is entitled to certain minimal procedural due process rights to challenge his classification as part of his habeas corpus proceeding. See Rasul, 542 U.S. at 480-81; Hamdi, 542 U.S. at 524-35. But neither of these cases decided what, if any, constitutional protection is afforded to non-citizens who are detained at Guantánamo, let alone in Afghanistan. Indeed, any doubt about this point was squarely put to rest by the United States Court of Appeals for the District of Columbia, which just recently confirmed its prior precedent that "the Constitution does not confer rights on aliens without property or presence within the United States," including alien detainees being held at Guantánamo. Boumediene v. Bush, 476 F.3d 981, 991-94 (D.C. Cir. 2007), cert. denied, Nos. 06-1195, 06-1196, – S. Ct. – , 2007 WL 957363 (Apr. 2, 2007). It is thus flatly incorrect to say that Rasul or Hamdi clearly established that an alien detained outside the United States is entitled to certain constitutional rights. And this means that, regardless of whether plaintiffs were

detained before or after the Supreme Court's decisions in those two cases, this Court still will have to determine whether plaintiffs' claimed constitutional rights were clearly established – just as it did in Rasul.  See Rasul v. Rumsfeld, 414 F. Supp. 2d 26, 41-44 (D. D.C. 2006).

Of course, a necessary predicate to a "clearly established" constitutional right is the existence of an actual constitutional right.  See Hope v. Pelzer, 536 U.S. 730, 736 (2002).  In this respect, the distinction plaintiffs Hasam and Muhammad have drawn as to the timing of their detentions becomes all the more artificial.  Again, the D.C. Circuit categorically stated in Boumediene that aliens do not enjoy constitutional rights while being detained at Guantánamo. And applying this same rationale in the context of a suit brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), this Court recently held that non-resident aliens do not have enforceable constitutional rights while they are detained by United States military forces in Iraq and Afghanistan.  See In re Iraq & Afghanistan Detainees Litig., – F. Supp. 2d – , 2007 WL 926145, *6-13 (D. D.C. 2007).  Thus, the fact remains that plaintiffs in this case cannot make out the violation of any constitutional right, regardless of "the particular time frame of [plaintiffs'] period of detention."  Pl. Opp. at 9.

Plaintiffs Hasam and Muhammad next contend that their alleged detentions after being classified as "non-enemy combatants" distinguishes this case from Rasul in some meaningful way.  See Pl. Opp. at 10.  It does not.  Again, this argument ignores the other three plaintiffs in this case who, like the plaintiffs in Rasul, have made no similar allegations.  And it is also once again irrelevant. Although plaintiffs interpret the Supreme Court's decision in Hamdi as attaching constitutional significance to the issue of whether an individual's detention is authorized under the Authorization for Use of Military Force ("AUMF"), 115 Stat. 224, see id., it

in fact did no such thing. The importance of the AUMF, as the Supreme Court specifically stated, was that it answered the antecedent question of whether the Executive branch has the authority to lawfully detain citizens who qualify as "enemy combatants." See Hamdi, 542 U.S. at 516-17. At no point did the Court ever address whether an individual (and certainly not an alien detained outside the United States) is entitled to more (or any at all) constitutional protection after being classified as a non-enemy combatant than before. Similarly, whether the "continued detention" of plaintiffs Hasam and Muhammad was in fact "authorized by Congress under the [AUMF]," Pl. Opp. at 10, is a non-issue because these plaintiffs do not allege, as a separate cause of action, that their detentions violated the AUMF.

Another of plaintiffs' red herrings is the claim by plaintiffs Ibrahim Sen and Nuri Mert based on the Vienna Convention on Consular Relations. See Pl. Opp. at 10; Celikgogus Am. Compl. ¶¶ 212-16. Citing Jogi v. Voges, – F.3d –, 2007 WL 730550 (7th Cir. 2007), these two plaintiffs argue that the right of consular notice and assistance under the Vienna Convention is "self-executing" and confers individual rights on them. See Pl. Opp. at 10. Regardless of the merits of this theory, which defendants do not concede, what plaintiffs fail to mention is that the court in Jogi specifically held that, "rather than wade into the treacherous waters of implied remedies," the plaintiff in that case could enforce his rights under the Vienna Convention through 42 U.S.C. § 1983, as he had sued various state and local law enforcement officials. Jogi, 2007 WL 730550 at *1. In contrast, because plaintiffs in this case have sued solely federal officials, they cannot use § 1983 as a vehicle to enforce their alleged rights under the Vienna Convention, see Settles v. United States Parole Comm'n, 429 F.3d 1098, 1104 (D.C. Cir. 2005) (holding that

§ 1983 "does not apply to federal officials acting under color of federal law"), and they cannot use Bivens (which itself is a judicially-implied remedy) due to the Westfall Act.

Under the Westfall Act, federal employees are absolutely immune from most torts they commit while acting within the scope of their employment. See 28 U.S.C. § 2679(b)(1). The only exceptions are for violations of the Constitution or a federal statute. See id. § 2679(b)(2). The Vienna Convention is neither; it is, rather, a treaty. See Jogi, 2007 WL 730550 at *5. For this reason, plaintiffs' claim based on the Vienna Convention is no different than their claim under the Geneva Conventions, see Celikgogus Am. Compl. ¶¶ 207-11, which is no different than the claim based on the Geneva Conventions in Rasul, see Rasul Compl. ¶¶ 180-84, which Judge Urbina analyzed and ultimately dismissed under the Westfall Act and Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. See Rasul, 414 F. Supp. 2d at 31-39; see also In re Iraq & Afghanistan Detainees Litig., 2007 WL 926145 at *22 (finding that Bivens claim based on Geneva Conventions is barred by Westfall Act because it is a treaty and, therefore, not a "statute of the United States" as that phrase is used in the statute). Because this same analysis would apply equally to plaintiffs' claim under the Vienna Convention, that claim also does nothing to distinguish this case from Rasul.[3]

Plaintiffs rightly point out that the purpose behind Local Rule 40.5 is to promote judicial economy. See Tripp v. Executive Office of the President, 196 F.R.D. 201, 202 (D. D.C. 2000). "It will often prove wasteful of time and resources for two judges to be handling cases that are so

---

[3] The same is true of plaintiffs' claims under the First Amendment and 42 U.S.C. § 1985. The former is largely duplicative of plaintiffs' RFRA claim and, in any event, is subject to the same qualified immunity defense discussed above. As for the latter, it simply alleges that defendants conspired to deprive plaintiffs of the rights enumerated elsewhere in their complaint, thus adding no new substantive content.

related that they involve common factual issues or grow out of the same event or transaction." Id. In applying this principle, this Court has found that two cases are not related when they allege discrimination against plaintiffs who are members of distinct protected classes occurring in different geographical areas. See Keepseagle v. Glickman, 194 F.R.D. 1, 3 (D. D.C. 2000) (cases were not related where they alleged discrimination against Native Americans and African-Americans in "entirely different regions of the country"); Stewart v. O'Neill, 225 F. Supp. 2d 16, 20 (D. D.C. 2002) (cases were not related where they alleged discrimination against African-Americans and Hispanic agents employed by different federal agencies in different geographical areas). This case and Rasul, on the other hand, both involve non-resident aliens alleging similar mistreatment while being detained in the same places – Guantánamo and Afghanistan – and blaming many of the same individual defendants under nearly identical causes of action. Given Judge Urbina's familiarity with these issues, it would be immensely wasteful to have another Judge on this Court plough the same ground. Defendants therefore respectfully request that this case be reassigned to Judge Urbina as related to Rasul.[4]

---

[4] Plaintiffs suggest in passing that this case cannot be deemed related to Rasul because Rasul is on appeal and therefore no longer "pending on the merits," as required by Local Rule 40.5(a)(3). See Pl. Opp. at 11. This is somewhat odd, given that plaintiffs' counsel previously agreed that this case should be identified as related to Rasul at a time (on August 2, 2006) when the cross-appeals in Rasul already had been docketed (on July 31, 2006). See Exh. A; Rasul v. Rumsfeld, Nos. 06-5209, 06-5222 (D.C. Cir.). In any event, this Court has held that, "except in unusual circumstances, a case cannot still be pending on the merits in the district court once an appeal has been properly taken because the case would not be appealable absent a final judgment." Keepseagle, 194 F.R.D. at 3 (emphasis added). Defendants previously have noted that Judge Urbina denied defendants' motion to dismiss in Rasul as to plaintiffs' RFRA claim. See Rasul v. Rumsfeld, 433 F. Supp. 2d 58 (D. D.C. 2006). Accordingly, no final judgment was ever entered as to that claim and that portion of the case is now up on an interlocutory appeal, based on the Court's denial of qualified immunity. Although defendants have been unable to find any case law addressing the matter, they submit that an interlocutory cross-appeal regarding a claim as to which the Court did not enter final judgment is sufficient to rebut the "general

## II.     THIS CASE SHOULD BE STAYED PENDING THE APPEAL IN RASUL

Considerations of judicial economy warrant not only that this case be reassigned, but also that it be stayed pending the outcome of the appeal in Rasul. Tellingly, apart from the minor and insignificant differences between this case and Rasul discussed above, plaintiffs offer no reason to dispute that the D.C. Circuit's decision in Rasul will be dispositive of the core issues in this case and, ultimately, will determine how this case should proceed, if at all. See Pl. Opp. at 12-14. With that in mind, entering a stay in this case should depend not, as plaintiffs insist, on how burdensome it would be for some of the defendants to simultaneously defend two law suits, see id. at 13-14, but on how immensely wasteful it would be of both the litigants' and the Court's resources to rehash and revisit the same arguments all over again. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).

Indeed, these precise considerations prompted this Court to stay dozens of cases filed by Guantánamo detainees petitioning the Court for writs of habeas corpus – because factually and legally related cases were then pending before the D.C. Circuit. See Def. Mot. to Stay at 4 (collecting some of these cases). Plaintiffs notably do not respond at all to this point, arguing instead that, under Dellinger v. Mitchell, 442 F.2d 782 (D.C. Cir. 1971), judicial efficiency is "insufficient to warrant a stay" pending the D.C. Circuit's decision in Rasul. Pl. Opp. at 14. As exemplified by the stays entered in the Guantánamo detainee habeas cases, however, this Court has not construed its power to stay cases pending an appeal as narrowly as plaintiffs suggest. Because the circumstances justifying the stays in the habeas cases are directly analogous to those presented here, the Court likewise should stay this case.

---

presumption" that a case on appeal is not "pending on the merits." Keepseagle, 194 F.R.D. at 3.

The stays entered in the Guantánamo detainee habeas cases also refute the notion that "a stay of this case would harm Plaintiffs." Pl. Opp. at 13. All of the plaintiffs in this case admit they have been released from United States custody. Celikgogus Am. Compl. ¶¶ 4, 5. In contrast, the petitioners in the habeas cases obviously were still being detained. Arguably, then, the habeas petitioners had a much more compelling reason for the court to deny the stay requests than plaintiffs here – unlike former detainees, the petitioners' detentions continued while waiting for the court of appeals to rule. The Court nevertheless found it appropriate to stay the habeas cases until the D.C. Circuit provided further guidance. Because this Court thus has decided that, in weighing whether to grant a stay pending an appeal, any potential prejudice to individuals who are currently being detained at Guantánamo is outweighed by the interest of judicial efficiency, it necessarily should follow that the scales tip in favor of a stay even more heavily in the case of former Guantánamo detainees who have been released.

Finally, plaintiffs' cries of "undue delay," Pl. Opp. at 13, fall flat given their own failure to prosecute, and previous agreement to stay, this case, while their attempt to shift blame for these delays to defendants is illogical and unfounded. As previously noted, plaintiffs' counsel let the first incarnation of this case, Celikgogus v. Rumsfeld, No. 05-CV-2480 (RMU) (D. D.C.), sit on the Court's docket for almost a year without ever trying to serve any of the defendants.[5] In the meantime, plaintiffs' counsel agreed to withdraw that case, refile it as a new action, identify the new action as related to Rasul (as was done with the prior suit), and then file a motion to stay the newly-filed action pending the appeal in Rasul. See Exh. A. Several months later, plaintiffs'

---

[5] This is despite the fact that defense counsel had informed plaintiffs' counsel that the defendants named in that case had authorized defense counsel to accept service on their behalf.

counsel finally voluntarily dismissed the original complaint and refiled it as a new action, but refused to identify it as related to Rasul or request a stay, as previously agreed. Plaintiffs then waited 120 days before serving nine of the defendants originally named in this case.[6]

And now, after all of that, plaintiffs appear to accuse defendants for all of these delays by suggesting that defendants are "largely responsible for secreting the information required to substantiate the complaint . . . ." Pl. Opp. at 13. But it should be self-evident that defendants are under no obligation to engage in discovery before they have been served. There simply can be no debate that the inactivity in this case up to this point is due solely to plaintiffs' inaction. More importantly, though, any additional minor delays in this case beyond what plaintiffs themselves have caused will be more than offset by the efficiencies gained in waiting for guidance from the D.C. Circuit.

## **CONCLUSION**

For all of these reasons, defendants respectfully request that the Court reassign this case as related to Rasul v. Rumsfeld, No. 04-CV-1864 (RMU) (D. D.C.), and stay all further proceedings in this case pending a decision by the D.C. Circuit in Rasul v. Rumsfeld, Nos. 06-5209, 06-5222 (D.C. Cir.).

---

[6] Rather than trying to effect personal service on the remaining defendants who are named in plaintiffs' recently-filed amended complaint, plaintiffs' counsel has agreed to wait for these defendants to request representation by the Department of Justice, with the expectation that such representation will be authorized and that these defendants, in turn, will authorize the undersigned to accept service on their behalf.

-11-

>Respectfully submitted,
>
>PETER D. KEISLER
>Assistant Attorney General, Civil Division
>
>C. FREDERICK BECKNER III
>Deputy Assistant Attorney General, Civil Division
>
>TIMOTHY P. GARREN
>Director, Torts Branch, Civil Division
>
> /s/ James R. Whitman
>JAMES R. WHITMAN
>Wis. Bar Member No. 1036757
>Trial Attorney
>United States Department of Justice
>Torts Branch, Civil Division
>P.O. Box 7146
>Ben Franklin Station
>Washington, D.C. 20044-7146
>Tel:  (202) 616-4169
>Fax:  (202) 616-4314

Dated:  April 13, 2007

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on April 13, 2007, I electronically filed with the Clerk of the Court, by using the Court's CM/ECF system, the foregoing "DEFENDANTS' REPLY IN SUPPORT OF THEIR NOTICE OF RELATED CASE AND MOTION TO STAY."

    /s/ James R. Whitman
JAMES R. WHITMAN
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044-7146

# EXHIBIT A



U.S. Department of Justice

Civil Division

_Washington, D.C. 20530_

October 5, 2006

**Via Facsimile (212) 614-6499 and First Class Mail**

Barbara J. Olshansky, Esq.
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

    Re:  *Yuksel Celikgogus v. Donald Rumsfeld, et al.*,
          Civil Action No. 05-CV-02480 (RMU) (D.D.C.)

Dear Ms. Olshansky:

     My July 17, 2006, letter to you recommended that since Judge Ricardo M. Urbina is also the presiding judge in the present case and his rulings in *Shafiq Rasul, et al., v. Donald Rumsfeld, et al.*, Civil Action No. 04-CV-01864 (RMU) (D.D.C.), are currently on appeal to the D.C. Circuit, it may be appropriate to stay all proceedings in this action pending the outcome of the *Rasul* appeal. In our August 2, 2006, telephone conversation you agreed but stated that you would prefer to withdraw the plaintiff's complaint, re-file it as a case related to *Rasul*, and only then file a motion for a stay of proceedings pending the D.C. Circuit's decision. Despite my concurrence to that approach, those actions have not been taken.

     I still believe a stay is in order as I do not believe it is appropriate for the case to continue to languish on the docket without consultation with and approval by the Court. As we also discussed previously, because the defendants have yet to be served and, consequently, have not yet appeared in this action, it seems more appropriate that a stay should be requested by the plaintiff.

     Please contact me if you would like to address this issue. I appreciate your attention to this matter.

                                                Sincerely,

                                                JAMES G. BARTOLOTTO

Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Constitutional & Specialized Tort Litigation
P.O. Box 7146
Washington, D.C. 20044
Telephone (202) 616-4174
Facsimile (202) 616-4314
*James.Bartolotto@usdoj.gov*

Attorneys for the defendants