## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**YUKSEL CELIKGOGUS**, *et al*,          )
                                                          )
          Plaintiffs,                                   )
                                                          )          **06-CV-1996 (HHK)**
v.                                                      )
                                                          )
**DONALD RUMSFELD**, *et al*,          )
                                                          )
          Defendants.                                 )
_____)

## PLAINTIFFS' MOTION FOR FURTHER STAY

Plaintiffs Yuksel Celikgogus, Ibrahim Sen, Nuri Mert, Zakirjan Hasam and Abu

Muhammad respectfully request that the Court order a further stay of proceedings in this

case pending final resolution of the cases *Rasul v. Rumsfeld*, Nos. 06-5209, 06-5222

(D.C. Cir.) ("*Rasul*") and *Boumediene v. Bush*, Nos. 06-1195/06-1196 (U.S.)

("*Boumediene*").

## STATEMENT OF FACTS

In this case, Plaintiffs — all former detainees at the Guantanamo Bay Detention

Facility — seek damages for torture, prolonged arbitrary detention, humiliating and

degrading treatment, and other interference with the rights afforded to them under both

international and United States law.  In particular, these acts are in violation of the

Geneva Conventions, the Vienna Convention on Consular Relations, and other

international laws, and actionable under the Alien Tort Statute.  Plaintiffs also seek

damages for these acts as violations of the laws of the United States.  The alleged

violations include interference with Plaintiffs' religion under the First Amendment and

the Religious Freedom Restoration Act ("RFRA"), deprivation of their due process rights under the Fifth Amendment, and violation of their civil rights under 42 U.S.C. § 1985.

Although there are pertinent and material differences between the Plaintiffs in this case and in *Rasul* (*see, e.g.*, Order of May 22, 2007, denying related case reassignment), this Court previously stayed this case on May 22, 2007, pending the outcome of the consolidated appeals in *Rasul*. The Court of Appeals for the District of Columbia Circuit has now decided the appeals in *Rasul*; however, on February 25, 2008, the plaintiffs in that case filed a petition for rehearing en banc, which has yet to be decided. The petition addresses several critical legal issues — including whether Guantanamo detainees are "persons" under the RFRA; whether torture is within the scope of employment of U.S. military personnel; and whether military officers knew that torture was illegal — which bear directly on issues in this case.

In addition, while this case was stayed, the Supreme Court received briefing and heard oral argument in *Boumediene*. One of the issues in *Boumediene* concerns which constitutional rights should be extended to Guantanamo detainees — also at issue in this case (and in *Rasul*). Oral argument in *Boumediene* took place on December 5, 2007, but the Court has not yet rendered its decision.

Absent a further stay in this case, Defendants' response to the Amended Complaint would be due March 11, 2008,[1] and they have indicated they will seek to dismiss this case **on the basis of the ruling in *Rasul***. But neither *Rasul* nor *Boumediene,* which are directly relevant to the issues raised by this case, is final. In light of that

---

[1] Following the Court of Appeals' January 11, 2008 ruling in *Rasul*, Defendants requested a 30-day extension of time, until March 11, 2008, to file a responsive pleading to Plaintiffs' First Amended Complaint. Defendants themselves acknowledged that the issues of law decided in *Rasul* would impact this case, and that they needed the additional time to properly analyze the *Rasul* decision. Plaintiffs did not oppose Defendants' motion, and the Court granted Defendants the 30-day extension they requested.

uncertainty, it would be inefficient for the parties to brief and the Court to hear (much less adjudicate) a motion to dismiss in this case, when a further ruling in *Rasul* or from the United States Supreme Court in *Boumediene* could significantly impact the outcome on such a motion. For this reason, Plaintiffs respectfully request a further stay of proceedings.[2]

## <u>DISCUSSION</u>

This Court has already determined that the sufficient overlap in the legal issues presented in this case and *Rasul* warrants a stay of this case pending resolution of the *Rasul* appeal.[3] To efficiently manage its docket, and avoid unnecessary consumption of the parties' resources, the Court has the power to further stay proceedings, so as to preserve the "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). *Rasul* has not been finally resolved, pending a determination on en banc review (and potential future petition for certiorari in the Supreme Court). Because of the potential impact on this case and in order to conserve the time and energy of the Court, counsel and litigants, Plaintiffs request a further stay until the decision in *Rasul* is final, and until the Supreme Court renders a decision in *Boumediene*.

---

[2] As set forth in the accompanying motion to file Second Amended Complaint, Plaintiffs are also seeking leave of the Court to correct a number of administrative errors in the Amended Complaint by filing and serving a Second Amended Complaint. Plaintiffs request that a further stay of proceedings be imposed following the filing of the Second Amended Complaint.

[3] Plaintiffs opposed the Government's original Motion for Stay on the grounds that this case is not *factually* "related to" *Rasul*. This Court apparently agreed and declined to reassign this case to Judge Urbina, before whom the *Rasul* case was pending. Order of May 22, 2007. However, at the same time, the Court recognized (and Defendants argued in their Motion to Stay) that the *legal* issues in *Rasul* are sufficiently similar to those at issue in this case to warrant a stay. *Id.* For that same reason, a further stay is warranted until *Rasul* is final.

The en banc petition in *Rasul* (attached hereto as Appendix A) seeks review of three issues from the panel's opinion, all of which would impact circuit law and the instant case. *First*, the petition seeks review of the panel's determination that, based on a portion of the legislative history of RFRA, Guantanamo detainees are not "persons" for purposes of that law, and therefore, are not eligible for RFRA protections.[4]

*Second*, the petition seeks review of the panel's decision that, as a matter of law, torture is within the scope of employment of the government defendants. Based on documents produced in the District Court in *Rasul* that demonstrate that torture does not fall within the scope of military employment, at a minimum, there is a question of fact on this point.

*Third*, the petition seeks review of the panel's decision that government actors accused of torturing and violating the religious freedom of Guantanamo detainees are subject to qualified immunity, despite long-standing United States law prohibiting their conduct. A decision of the en banc Court of Appeal on any one of these three issues would have a direct impact on the resolution of the instant case.

But even if the en banc court does not completely reverse the panel's decision on qualified immunity, its decision may still impact this case. For example, a holding that it was clearly established that torture was illegal as of a particular date could bear directly on the claims of the Plaintiffs here, who were detained at Guantanamo until late 2006. Prohibitions on torture in the Law of War, the Uniform Code of Military Justice, the Convention Against Torture, or U.S. criminal law put the *Rasul* defendants on notice that

---

[4] RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government action "is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000bb-1(a)-(b).

torture was illegal (at Guantanamo Bay and anywhere else).[5]  Those prohibitions were in place long before the December 2007 panel decision in *Rasul* and, thus, would directly impact the claims at issue in this case.

The Supreme Court's decision in *Boumediene* similarly could address issues that would affect directly the outcome of the instant case.  The defendants in that case argued that Guantanamo detainees were not entitled to constitutional protection because the United States does not have "sovereignty" over the base at Guantanamo.  *But see Rasul v. Bush*, 542 U.S. 466, 482 n.15 (2004).  Irrespective of the en banc court's ultimate decision in *Rasul*, a decision by the Supreme Court in *Boumediene* that Guantanamo detainees *are* entitled to Constitutional protection would provide additional support for the ability of Plaintiffs in this case to seek relief under the First and Fifth Amendments to the United States Constitution as well as the RFRA.

The instant case should be stayed pending the final outcome of *Rasul* and *Boumediene* because rulings on federal law in either case will apply to all cases still open on direct review, regardless of whether such events predate or postdate announcement of the rule.  *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97-99 (1993).  A case remains open on direct review until "the availability of appeal has been exhausted or has lapsed, and the time to petition for certiorari has passed."  *Bradley v. Sch. Bd. of the City of Richmond*, 416 U.S. 696, 710-11 n.14 (1974) (citation omitted).  Because any changes to the law announced in *Rasul* or *Boumediene* will apply to the instant case until appeal and certiorari procedures are exhausted, it will conserve the resources of Court, counsel

---

[5] *See* Pet. of Appellants/Cross-Appellees Rasul, et al., for Reh'g and Suggestion for Reh'g En Banc, at pp. 11-14.  Plaintiffs continued in detention at Guantanamo after the enactment of the Detainee Treatment Act, which provided further notice that torture was illegal (*see* 42 U.S.C. § 2000dd(a)), and that the prohibition on torture extended to Guantanamo.  *See* 42 U.S.C. § 2000dd(b) ("Nothing in this section shall be construed to impose any geographical limitation on the applicability of the prohibition against cruel, inhuman, or degrading treatment or punishment under this section.").

and litigants to stay this case until *Rasul* and *Boumediene* are final. *Landis*, 299 U.S. at 254-55.

A further stay will not prejudice either party. Given that *Boumediene* has already been briefed and argued, and the petition for rehearing in *Rasul* has already been filed, a further stay in the instant case pending final decisions in those cases will not unduly delay the proceedings in the instant case. Moreover, any generalized presumption against stays should not apply here, where the parties who would be opposing the stay are parties in all of the cases. In particular, the Defendants in this case are also parties to *Rasul* and *Boumediene* and cannot complain that they are being forced to "stand aside" in this case when material issues remain unresolved in *Rasul* and *Boumediene*. *Cf. Landis*, 299 U.S. at 255 ("only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court stay all further proceedings in this case, until the later of (i) the date of decision by the United States Supreme Court in *Boumediene*; or (ii) the final resolution of appeals in Rasul.

Dated:  March 7, 2008

Respectfully submitted,


/s/ Shayana Kadidal
Shayana Kadidal [D.C. Bar No. 454248]
Carolyn Patty Blum
Michael Ratner
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 614-6438
Fax:  (212) 614 6499


/s/ Robert A. Rosenfeld
Robert A. Rosenfeld [CA Bar No. 86970]
Neil A. F. Popovic [CA Bar No. 132403]
Russell P. Cohen [CA Bar No. 213105]
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104
Tel:  (415) 772-6000
Fax:  (415) 772-6264
*(not yet admitted pro hac vice)*

7

**Appendix A**

**to**

**Plaintiffs' Motion For Further Stay**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FEB 2 5 2008

RECEIVED

CASE NOS. 06-5209, 06-5222

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

### SHAFIQ RASUL, et al.,
**Appellants/Cross-Appellees**

v.

### RICHARD MYERS, AIR FORCE GENERAL, et al.,
**Appellees/Cross-Appellants.**

Appeal from the United States District Court
For the District of Columbia, C.A. No. 1:04CV01864 (RMU)
The Honorable Ricardo M. Urbina, District Judge

## PETITION OF APPELLANTS/CROSS-APPELLEES RASUL, ET AL., FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

**Michael Ratner**
**Shayana Kadidal**
**CENTER FOR**
**CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, NY 10012
Telephone: 212-614-6464
Facsimile: 212-614-6499

**Eric L. Lewis  (#39627)**
**A. Katherine Toomey  (#46678)**
**Sarah L. Knapp  (#49711)**
**BAACH ROBINSON & LEWIS PLLC**
**1201 F STREET N.W., Suite 500**
**Washington, D.C.  20004**
**Telephone: 202-833-8900**
**Facsimile: 202-466-5738**

**Attorneys For Appellants/Cross-Appellees**

**Dated:  February 25, 2008**

The war on terror tests our system's commitment to the rule of law and the irreducible rights of human beings to be free from the twin specters of torture and religious humiliation.    In holding that Guantanamo detainees are not "persons" under the Religious Freedom Restoration Act and that the senior officials and military officers, who ordered or approved the torture and religious humiliation of these detainees, are entitled to Westfall Act and good faith immunity, the panel opinion dishonors the commitments to religious tolerance and respect for individual dignity that are at the core of our constitutional system.    As the concurrence warns, the majority decision "leaves us with the unfortunate and quite dubious distinction of being the only court to declare those held at Guantanamo are not 'person[s].' This is a most regrettable holding in a case where plaintiffs have alleged high-level U.S. government officials treated them as less than human."[1]

This petition provides an opportunity for this Court to undo this "most regrettable holding" and presents the following issues of exceptional importance:

> *1) Did the panel majority err in reversing the district court and determining that plaintiffs are not "persons" protected by the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq.?*

As the concurrence recognizes, the panel majority strains to exclude detainees from the broad protections of RFRA by construing the term "person" in a manner wholly at odds with the "fundamental canon of statutory construction" that

---

[1]    *Rasul v. Myers*, No. 06-5209, 06-5222, slip op. at 9 (D.C. Cir. Jan. 11, 2008) (Brown, J., concurring) ("Concurrence").

"words will be interpreted as taking their ordinary contemporary, common meaning."[2]  Since it is flatly contrary to this Court's accepted canons of statutory construction, the majority opinion is without basis in the law.

> *2) Did the panel err in holding as a matter of law that the ordering of torture by the Secretary of Defense and senior military officers was within the scope of their employment?*

If one fixed star exists in the firmament of universal justice, it is that torture is *never* permissible.  Yet the panel declared the defendants here immune from liability because, as a matter of law, it deemed the ordering of torture by the Secretary of Defense and senior military commanders to be "incidental" to the military's task of interrogating detainees and therefore within the line of duty.  The military itself abjures such a proposition.  Military law absolutely forbids both the giving and the following of an order to torture.   Contrary to the panel's decision, torture is not an incidental, foreseeable consequence of U.S. detention.  The entire legal and ethical structure governing military detention is designed to prevent torture.

> *3) Did the panel err in holding that the Secretary of Defense and senior military officers could not have known that it was illegal to torture detainees at Guantanamo?*

Qualified immunity exists to insulate government officials from liability when they act in good faith.  Defendants did not argue that they were unaware of

---

[2]  *Id.* at 4.

the universal prohibition on torture. Rather, defendants argued, and the panel accepted, that they are entitled to qualified immunity because, despite numerous laws and regulations unequivocally prohibiting torture, defendants were not aware that the plaintiff detainees' right not to be tortured is grounded as well in the U.S. Constitution. The record below is clear, however, that defendants shipped detainees to Guantanamo precisely on the calculated gamble that, if challenged, a court would agree that they had no constitutional rights there, freeing defendants to torture them with impunity. This is not lack of awareness of wrongdoing; it is the very opposite. It is premeditated misconduct, the antithesis of the good faith which qualified immunity presupposes.

The torture and religious humiliation of Muslim detainees at Guantanamo Bay stands as a shameful episode in the history of the United States. Every applicable source of law prohibits in the strongest terms what happened here. This petition presents this Court with the opportunity to remedy this stain on the moral authority of the law, to revisit a uniquely insupportable exercise in statutory construction, and to facilitate accountability for these terrible acts.

## ARGUMENT

### I.    Plaintiffs Are "Persons" Under RFRA.

The panel decision should be reconsidered because it is without statutory basis. RFRA is clear. It declares that the "Government shall not substantially

burden a person's exercise of religion."[3]  RFRA creates a uniform obligation for the federal government to respect private religious observance and a private cause of action against government officials who violate its terms.  The district court correctly found the religious harassment that defendants employed when torturing these plaintiffs, including "[f]lushing the Koran down the toilet and forcing [them] to shave their beards falls comfortably within the conduct prohibited from government action by RFRA."[4] Defendants never argued to the contrary.

The majority, however, overruled the district court on the ground that plaintiffs, who are unquestionably persons in any common-sense meaning of the word, are not "persons" under RFRA because they are non-resident aliens.  Yet the ordinary word "person" is widely used in statutes to denote the broadest possible applicability.  As noted by Judge Brown in her concurrence, the panel's resort to a review of legislative history and to importation of constitutional precedent in order to conclude that plaintiffs are not "persons" for purposes of this statute contradicts the "fundamental canon of statutory construction" that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."[5]

---

[3]    42 U.S.C. § 2000bb-1 (1993).

[4]    *Rasul v. Myers*, No. 06-5209, 06-5222, slip op. at 10 (D.C. Cir. Jan. 11, 2008) ("Opinion").

[5]    Concurrence at 4 (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Had the majority adhered to this established canon, it could only have concluded that "person" is on its face a broad term, and that the statutory language limits it by neither citizenship nor residence.[6] Unlike 42 U.S.C. §§1981 & 1983, there is nothing in the text of RFRA to indicate that Congress intended to limit the term "person," in any way.[7] Where an unambiguous word is undefined in a statute, it is to be construed "in accordance with its ordinary or natural meaning."[8]

Moreover, the panel's construction of RFRA conflicts with the Supreme Court's approach in *Rasul v. Bush*, a closely analogous case. Like the federal habeas statute at issue in *Rasul*, RFRA creates distinct statutory rights that do not just reiterate but supplement specific constitutional protections.[9] As the Supreme Court recognized in *Rasul*, under these circumstances, the statute may not be construed as limited by the parallel constitutional provision. Rather, the statute should be applied based on its own terms, in accordance with established methods

---

[6]  *See, e.g., Constructores Civiles de Centroamerica S.A. v. Hannah,* 459 F.2d 1183, 1190 (D.C. Cir. 1972) (use of the word "person" rather than "citizen" in the APA allowed a non-resident alien to challenge an agency decision); *O'Rourke v. Dep't, of Justice,* 684 F. Supp. 716, 718 (D.D.C. 1988) ("Congress thus distinguishes between a "citizen" and "any person" when it wishes to do so").

[7]  Sections 1981 and 1983 each refer to persons "within the jurisdiction" of the United States. No such limit was incorporated in RFRA.

[8]  *F.D.I.C. v. Meyer,* 510 U.S. 471, 476 (1994).

[9]  *See* Brief for the United States, *City of Boerne v. Flores,* 1997 U.S. S. Ct. Briefs LEXIS 185 (Jan. 10, 1997) at *70-71 & n. 40 (citing cases) (RFRA creates distinct and enhanced statutory rights, but does not affect the scope of the First Amendment).

of statutory interpretation. As the Court stated, expressly in reference to detention of aliens at Guantanamo:

> Considering that § 2241 draws no distinction between Americans and aliens held in federal custody, there is little reason to think that Congress intended the geographical coverage of the statute to vary depending on the detainee's citizenship. Aliens held at the base, no less than American citizens, are entitled to invoke the federal courts' authority under § 2241.[10]

No less so here. Like Section 2241, RFRA draws no distinction between citizens and aliens, and provides no indication that its geographic coverage was intended to vary based on a claimant's citizenship. Under accepted tenets of statutory construction, and consistent with the Supreme Court's approach in *Rasul*, plaintiffs are protected by RFRA and have a statutory cause of action under it.

Ignoring the applicable canons of construction which require that an unambiguous statute be enforced according to its terms, the majority leapfrogs over the plain language of the statute, and relies exclusively on snippets of RFRA's legislative history, concluding that: i) the purpose of the statute was to restore the constitutional guaranty of free exercise of religion; and ii) accordingly, RFRA's use of the word "person" should be imbued with a constitutional interpretation. Thus, the majority holds that, because nonresident aliens are arguably not included as "persons" under Fourth or Fifth Amendment jurisprudence, they have no *statutory* rights under RFRA. Not only did the majority improperly resort to

---

[10] *Rasul v. Bush*, 542 U.S. 466, 480 (2004).

legislative history to limit an unambiguous term of the statute, it also reads the legislative history selectively. The majority erroneously found that the *sole* purpose of RFRA was to restore the *status quo ante* the Supreme Court's holding in *Department of Human Resources v. Smith*.[11] The majority ignores the far broader purpose of the statute as expressed in the statutory language itself, "to provide a claim or defense to persons whose religious exercise is substantially burdened by government,"[12] which does not incorporate any limitations specific to constitutional Free Exercise jurisprudence.

Further, if resort to legislative history were warranted, that history only makes clear that Congress's purpose was not merely to overrule *Smith* but also to provide for a uniform federal standard with respect to burdens on religious observance and to extend a cause of action to persons and to places where previously it did not exist. Thus, RFRA overruled the decisions in *O'Lone v. Estate of Shabazz*,[13] which permitted prison officials to deny Muslim prisoners the right to attend services, and *Goldman v. Weinberger*,[14] which approved an Air Force regulation prohibiting the wearing of a yarmulke while in uniform.[15]   The

---

[11]  494 U.S. 872 (1990).

[12]  42 U.S.C. § 2000bb(b)(2).

[13]  482 U.S. 342 (1987).

[14]  475 U.S. 503 (1986).

[15]  S. Rep. No. 103-111(1983); H.R. Rep. No. 103-88 (1983).

7

majority's conclusion that RFRA is a narrowly circumscribed statute, and its unsupported inference of an unstated limitation on the definition of "persons," cannot be squared with RFRA's announced purpose to extend protection for religious freedom broadly to persons and places, specifically including prisons and military bases, where related constitutional protections had previously been held not to apply or to apply only in a substantially restricted form.

The majority's decision should be reconsidered because it is flatly wrong on RFRA and because it is wholly at odds with this Court's and the Supreme Court's jurisprudence on statutory construction.

## II.    Ordering Torture Was Not Within the Scope of the Defendants' Employment.

The panel also erred fundamentally in deciding, as a matter of law, that torture is within the scope of the defendants' employment for purposes of immunity under the Westfall Act.[16] This Court has recognized the inarguable proposition that torture violates the most basic norms of civilized conduct and law.[17] Yet the panel's decision finding torture as within the scope of employment can only be construed as a proclamation that torture is all part of a day's work for U.S. military officials. This decision must not be allowed to stand.

---

[16]    28 U.S.C. § 2679(d)(1) (2008).

[17]    *See Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 781 (D.C. Cir. 1984) (Edwards, J., concurring) (identifying the torturer as *hostis humani generis* – an enemy of all mankind).

Just as torture can never be authorized,[18] it is also so repugnant to all civilized norms and so thoroughly contrary to law that it can never be deemed incidental to a public official's duties. Nor can it be foreseeable or expectable that the Secretary of Defense and senior officers of the military would decide to order torture, in violation of all legal prohibitions against it.

But even if torture *could* be foreseeable and incidental to military duties – which it cannot – the panel clearly erred in making this determination in the instant case *as a matter of law*. The panel's decision to resolve this issue as a matter of law is directly contrary to recent precedent of this Court and the courts of the District of Columbia. Under D.C. law, the scope of employment is almost invariably a question of fact, not law.[19] Although a court may, rarely, decide, as a matter of law, that specified conduct is *outside* the scope of employment, no District of Columbia case has *ever* held, as a matter of law, that seriously criminal

---

[18] *See Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980); *In re Estate of Marcos Human Rights Litig.*, 25 F.3d 1467, 1472 (9th Cir. 1994); *Nuru v. Gonzalez*, 404 F.3d 1207, 1222-23 (9th Cir. 2005); *Xuncax v. Gramajo*, 886 F. Supp. 162, 175-76 (D. Mass. 1995). *Khouzam v. Hogan*, 2008 U.S. Dist. LEXIS 2073 at *18 (M.D. Penn. January 10, 2008) ("[i]n light of the universal condemnation of torture in numerous international agreements, and the renunciation of torture as an instrument of official policy by virtually all of the nations of the world (in principle if not in practice), . . . an act of torture committed by a state official against one held in detention violates established norms of the international law of human rights, and hence the law of nations.").

[19] *Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006); *see also Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (deciding scope of employment based on record developed in discovery).

9

conduct, like the torture at issue here, is *within* the scope of *anyone's* employment.[20]

The panel ignored entirely the evidence proffered by plaintiffs, both direct and inferential, that torture is necessarily outside the scope of the defendants' employment.[21]  There is a veritable mountain of evidence – from criminal laws, military codes, official proclamations, and international agreements – making clear that torture by any U.S. official is utterly prohibited, and therefore cannot be incidental to official duties.  In addition, plaintiffs presented direct evidence that the panel failed to consider.  In 1999, the U.S. State Department reported to the United Nations Committee Against Torture that the U.S. condemns torture in all circumstances and stated specifically, with respect to whether torture can ever be in the line of duty, that, "a commanding officer who orders [torture] *would be acting outside the scope of his or her position* and would be individually liable for the intentional infliction of bodily and emotional harm."[22]  An employer's admissions

---

[20]  *Majano,* 469 F.3d at 141.

[21]  The plaintiffs indicated what evidence they intended to seek if discovery were needed.  The Supreme Court, favoring discovery on this issue, has recognized that plaintiffs generally cannot rebut the Attorney General's certification "without some opportunity for discovery." *Gutierrez v. Lamagno*, 515 U.S. 417 at 427-28 (1995).

[22]  U.S. Department of State, Initial Report of the United States of America to the U.N. Committee Against Torture (1999), App. at 67, 69 (emphasis added).

concerning the scope of employment are clearly relevant under D.C. law.[23]  This

prior inconsistent statement by the government is sufficient, standing alone, to

raise a material issue of fact precluding judgment as a matter of law.[24]

## III.  Qualified Immunity Does Not Shield the Defendants from Liability for Torture and other Misconduct.

The panel held, in the alternative, that because no cases established

constitutional rights for the Guantanamo detainees,[25] defendants lacked notice that

they were not permitted to torture or subject plaintiffs to religious abuse.

Therefore, the panel reasoned, defendants are entitled to qualified immunity for

their acts.  The panel's conclusion is unsupportable:

i)    Regardless of whether case law already existed holding that Guantanamo detainees are protected by the Constitution, the obvious illegality of defendants' conduct gave defendants "fair warning" of their potential liability;

ii)   Having deliberately brought plaintiffs to Guantanamo in a cynical attempt to circumvent the criminal, civil, and military law prohibiting torture, arbitrary detention, and religious abuse and humiliation, defendants lacked the good faith that qualified immunity presupposes; and

iii)  Recognition of qualified immunity in these circumstances conflicts with the doctrine of command responsibility, a core principle of the Law of War and a key component of military discipline.

---

[23]  *Murphy v. Army Distaff Found.*, 458 A.2d 61, 63 (D.C. 1983) (employer's conflicting statements regarding employee's duties precluded decision concerning scope of employment as a matter of law).

[24]  *E.g., Crockett v. Abraham*, 284 F.3d 131, 133 (D.C. Cir. 2002).

[25]  *But see Rasul,* 542 U.S. at 484 n.15.

The panel's reasoning has been rejected by the Supreme Court in *United States v. Lanier*,[26] a closely analogous case. In *Lanier*, a state court judge was charged with multiple violations of 18 U.S.C. § 242 (depriving another of rights protected by Constitution) in connection with five sexual assaults perpetrated in his judicial chambers. He argued that he could not be held liable for a constitutional violation because he was not on notice that the Constitution was implicated in his criminal conduct. The Supreme Court rejected this argument on the ground that the illegality of the conduct was obvious. As the Court observed, "the easiest cases don't even arise. There has never been a ... Section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability."[27]

Like *Lanier*, this is a case in which it should be purblind obvious to any decent person, let alone senior officials charged with defending the Constitution, that it is always wrong and illegal to torture people. The panel erred when it focused solely on the purported ambiguity about the applicability of the Constitution to Guantanamo, and dismissed as irrelevant the Law of War, the Uniform Code of Military Justice, customary international law, the Geneva

---

[26] 520 U.S. 259, 271 (1997).

[27] *Id.* at 271 (internal citations omitted).

12

Conventions, the Convention Against Torture, and U.S. criminal law, all of which expressly prohibit defendants' conduct.

The teaching of *Lanier* is that officials cannot premise a claim of immunity on a professed ignorance of a constitutional norm, if they are, at the same time, willfully ignoring numerous other laws that clearly prohibit their conduct. That sort of fine parsing is not what the doctrine of qualified immunity is all about. Since defendants engaged in obvious and egregious criminal behavior, the lack of a previous decision conclusively establishing the existence of a *Bivens* action for Guantanamo detainees does not entitle defendants to qualified immunity.[28] Under the panel's reasoning, rapists, torturers, slavers and pirates acting under color of law are entitled to qualified immunity absent a direct judicial statement that their conduct violated the constitutional rights of their victims. *Lanier* holds to the contrary. Defendants may not get a free pass based on a jurisdictional technicality.

The panel's decision also overlooks defendants' lack of good faith, a prerequisite for a finding of qualified immunity. The government's own internal memoranda show that defendants were aware of the illegality of their acts and that they chose to incarcerate plaintiffs at Guantanamo in a conscious effort to circumvent the laws against torture.[29] Giving qualified immunity to defendants'

---

[28] *See id.; see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[29] Complaint ¶ 142, App. at 46.

calculated efforts to evade U.S. law fundamentally contradicts the rationale for qualified immunity, which presupposes officials acting in good faith with intent to obey the law. Qualified immunity was never intended to shield defendants who engage in deliberately unlawful conduct.[30] Defendants knowingly flouted every applicable legal standard when they tortured plaintiffs. They did not act in good faith and are not entitled to qualified immunity.

Finally, extending qualified immunity to the defendants contravenes fundamental policies of military justice and the Law of War. Under U.S. military law, persons in positions of command are, and must be, held personally accountable for the unlawful conduct of their subordinates, if they either directed it or knew or should have known of it and failed to take measures within their power to prevent it, or failed to investigate and punish violations of which they are or should have been aware.[31] The doctrine of command responsibility has been recognized in international law for at least six centuries,[32] and has become accepted as part of the Law of War. Given the longstanding prohibition on torture and the importance of command responsibility, as the military amici's brief makes

---

[30]  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see Polk v. Dist. of Columbia*, 121 F. Supp. 2d 56, 70 (D.D.C. 2000).

[31]  *See, e.g., In re Yamashita*, 327 U.S. 1 (1946); *Estate of Ford v. Garcia*, 289 F.3d 1283, 1286 (11th Cir. 2002).

[32]  *See* L.C. Green, Command Responsibility in International Humanitarian Law, 5 Transnat'l L. & Contemp. Probs. 319, 320-21 (1995).

clear, the extension of immunity of any sort in the present circumstances should be "inconceivable."[33]

## **CONCLUSION**

WHEREFORE, appellants/cross-appellees request that this Court grant the foregoing request for rehearing and/or rehearing en banc.

Respectfully submitted,

Eric L. Lewis (#39627)
A. Katherine Toomey (#46678)
Sarah L. Knapp (#49711)
BAACH ROBINSON & LEWIS PLLC
1201 F Street N.W. – Suite 500
Washington, D.C. 20004
202-833-8900
202-466-5738 (Fax)

Attorneys for Appellants/Cross-Appellees

Dated: February 25, 2008

---

[33] *See Br. of Amici Retired Military Officers et al.* at 17-18.

15

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of the foregoing Petition of Appellants/Cross-Appellees Rasul et al for Rehearing and Suggestion of Rehearing en Banc was sent via First Class Mail to the following on February 25, 2008:

Matthew Collette
US Department of Justice
950 Pennsylvania Avenue, NW
Room 7212
Washington, DC 20530

Michael Ratner
Shayana Kadidal
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

William C. Aceves
California Western School of Law
225 Cedar Street
San Diego, CA 02101

Paul Hoffman
Schonbrun, DeSimone, Seplow
    Harris & Hoffman
723 Ocean Front Walk
Venice, CA 90201

Sidney S. Rosdeitcher
Paul, Weiss, Rifkind,
Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064

K. Hollyn Hollman
Baptist Joint Committee
for Religious Liberty
200 Maryland Avenue, N.E.
Washington, DC 20002

Jerome A. Hoffman
Christopher C. Lund
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104

Dated: February 25, 2008

Sarah L. Knapp

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

_____

**YUKSEL CELIKGOGUS**, *et al*,     )
     )
     Plaintiffs,     )
     )     **06-CV-1996 (HHK)**
v.     )
     )
**DONALD RUMSFELD**, *et al*,     )
     )
     Defendants.     )
_____)

### [PROPOSED] ORDER RE MOTION FOR FURTHER STAY

This matter having come before the Court on Plaintiffs' Motion for Further Stay, and the Court having considered the motion, and for good cause shown, it is hereby

ORDERED that Plaintiffs' motion is GRANTED, and all further proceedings in this case are stayed, until the later of (i) the date of decision by the United States Supreme Court in *Boumediene v. Bush*, Nos. 06-1195/06-1196 (U.S.); or (ii) the final resolution of appeals in *Rasul v. Rumsfeld*, Nos. 06-5209, 06-5222 (D.C. Cir.).

DATE: _____     BY: _____

     Henry H. Kennedy, Jr.
     United States District Judge