IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YUKSEL CELIKGOGUS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 06-CV-1996 (HHK) |
| | ) |
| DONALD RUMSFELD, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO DISMISS

Defendants,[1] former Secretary of Defense Donald Rumsfeld, former Chairman, Joint Chiefs of Staff General Richard Myers, General James T. Hill, General Bantz J. Craddock, Major General Michael Lehnert, Major General Michael E. Dunlavey, Major General Geoffrey Miller, Brigadier General Jay Hood, Rear Admiral Harry B. Harris, Jr., Colonel Terry Carrico, Colonel Adolph McQueen, Brigadier General Nelson J. Cannon, Colonel Michael I. Bumgarner, Colonel Wade F. Dennis (incorrectly sued herein as "Dennis Wade"), and Mr. Esteban Rodriguez, respectfully submit this motion to dismiss the Amended Complaint as a matter of law, pursuant

---

[1] Although the first sentence of paragraph 16 of the Amended Complaint identifies "Marine Gen. Peter Pace" as a defendant, he is neither named in the caption, nor identified anywhere else within the Amended Complaint or the remainder of paragraph 16. See Am. Compl. General Pace was not served and has not entered an appearance in this action. As a result, he has not requested individual capacity representation by the Department of Justice or retained private counsel. Furthermore, the statute of limitations and the time period to serve General Pace have expired. Accordingly, General Pace is not a party to this litigation. On March 7, 2008, Plaintiffs filed a Motion for Leave to File Second Amended Complaint which purports to add, *inter alia*, General Pace as a defendant. See Docket No. 26. Defendants' opposition to that motion is forthcoming, however, even if the Court should grant Plaintiffs' motion, General Pace is still entitled to all the same defenses to Plaintiffs' claims raised herein.

to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The grounds for this motion are enumerated below.

## STATEMENT OF POINTS AND AUTHORITIES

The United States Court of Appeals for the District of Columbia Circuit's recent holding in <u>Rasul v. Myers</u>, 512 F.3d 644 (D.C. Cir. Jan. 11, 2008), forecloses recovery for Plaintiffs on any and all claims raised in the Amended Complaint. Defendants rely on the Court of Appeals' holding in <u>Rasul</u> as authority to dismiss Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because (1) it is a case which this Court held was related to the instant action and which resulted in a stay of these proceedings; and (2) the decision re-affirms existing Supreme Court and Circuit precedent squarely in the context of non-resident aliens detained outside United States sovereign territory who are suing federal employees solely in their individual capacities.

## BACKGROUND

This action involves claims for monetary damages and declaratory relief[2] by Plaintiffs, five non-resident aliens who allege they were detained at Guantanamo Bay Naval Station, Cuba ("Guantanamo"), and/or at a military installation in Afghanistan, by the United States military in the course of ongoing hostilities in Afghanistan and Iraq.[3] They assert that the former Secretary

---

[2] Because Plaintiffs are no longer detainees and do not face future injury, the requested declaratory relief is not available to them as a damages remedy in this individual capacity action. <u>See</u>, e.g., City of Houston v. Department of Hous. & Urban Dev., 24 F.3d 1421, 1429 n.6 (D.C. Cir. 1994).

[3] Plaintiffs Yuksel Celikgogus, Ibrahim Sen, and Nuri Mert are Turkish citizens who claim they were detained for over two years at a military facility in Kandahar, Afghanistan, and at Guantanamo, and later released to Turkey. Plaintiffs Zakirjan Hasam and Abu Muhammad, a Uzbek refugee and an Algerian, respectively, claim they were detained for over four years at a

of Defense and other high-ranking military officers are liable, in their individual capacity, for torture and abuse allegedly inflicted on Plaintiffs during their detention. See Am. Compl. Plaintiffs do not allege that the defendants personally tortured and abused them, but rather that they, *inter alia*, "exercised command and control over subordinates at the detention facilities" and "acquiesced in and/or permitted" this conduct. Id., ¶ 175. Relying upon Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, et seq., ("RFRA"), and the Federal Civil Rights Act, 42 U.S.C. § 1985(3), Plaintiffs assert nine claims for relief. Specifically, they claim violations of: (1) the ATS for "prolonged arbitrary detention," "torture," and "cruel, inhuman or degrading treatment or punishment;" (2) the Geneva Conventions; (3) the Vienna Convention on Consular Relations; (4) the First Amendment's freedom of religion; (5) the Fifth Amendment's right to due process; (6) RFRA's prohibition against religious interference; and (7) the Federal Civil Rights Act's prohibition against conspiring to deny equal protection of the laws. See Am. Compl.

      Plaintiffs commenced this action on November 21, 2006, and amended their complaint on March 21, 2007. See Docket Nos. 1 & 11. On March 23, 2007, Defendants filed a motion to stay the proceedings based on the pending appeals in the related case, Rasul v. Rumsfeld, No. 04-CV-1864 (RMU) (D.D.C.). See Docket Nos. 7, 12, & 13. On May 22, 2007, this Court ordered a stay pending the outcome of the consolidated appeals in Rasul v. Rumsfeld, Nos. 06-5209, 06-5222 (D.C. Cir.). See Docket No. 19. On January 11, 2008, the Court of Appeals issued its

---

military facility in Kandahar, Afghanistan, and later released to Albania. See Am. Compl. Plaintiffs Hasam and Muhammad were not detained at Guantanamo. Id.

decision in Rasul, affirming the dismissal of constitutional and international law claims by non-resident aliens against senior military personnel based on alleged acts of torture and abuse at Guantanamo. See Rasul v. Myers, 512 F.3d 644 (D.C. Cir. 2008). The Court of Appeals also rejected the Rasul plaintiffs' RFRA claim, overturning the District Court's prior determination that plaintiffs could maintain such a cause of action based on their alleged treatment at Guantanamo. Id. at 668-72. On January 22, 2008, this Court ordered Defendants to respond to Plaintiffs' Amended Complaint by March 11, 2008. See Docket No. 23.

## ARGUMENT

Because Celikgogus and Rasul allege nearly identical causes of action on behalf of former non-resident alien detainees held at Guantanamo and/or in Afghanistan, against many of the same defendants, the Court of Appeals' decision in Rasul forecloses, as a matter of law, the Plaintiffs' claims in this action. As the Court of Appeals noted, "we must follow Circuit precedent until and unless it is altered by our own *en banc* review or by the High Court." Rasul, 512 F.3d at 665 n.15 (citations omitted). Accordingly, the Amended Complaint in this action should be dismissed. See Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

In Rasul, the non-resident alien plaintiffs advanced the following causes of action relevant to this motion: (1) violation of the Fifth Amendment; (2) violation of the Eighth Amendment; (3) "prolonged arbitrary detention," "torture," and "cruel, inhuman or degrading treatment," in violation of the ATS; (4) violations of the Geneva Conventions; and (5) violations of RFRA. Rasul, 512 F.3d at 649, 651-52. On motion, the District Court dismissed the ATS and Geneva Convention claims based on the ground that the defendants were entitled to absolute immunity on those claims under the Westfall Act, 28 U.S.C. § 2679. Id. The District Court also

dismissed the constitutional claims by holding the defendants were entitled to qualified immunity because any constitutional rights the plaintiffs may have possessed were not clearly established at the time of the alleged violations.  Id. at 649, 652-53.  The District Court, however, did not dismiss the Rasul plaintiffs' RFRA claim.  Id. at 649, 653.  On appeal, the Court of Appeals not only affirmed the dismissal of the Rasul plaintiffs' ATS and Geneva Convention claims, but it also reversed the District Court's ruling as to the RFRA claim and dismissed it as well, holding, *inter alia*, that the Constitution and applicable statutes do not confer rights on non-resident aliens detained abroad.  Id. at 649, 665-67.  The Court of Appeals further held that, even if the Rasul plaintiffs could assert constitutional rights, the military official defendants were entitled to qualified immunity because it was not clearly established at the time that non-resident aliens possessed constitutional rights.[4]  Id.

The Court of Appeals' holdings in Rasul directly dispose of the claims brought by Plaintiffs in the instant action.  These holdings not only clearly apply to the present case but they compel dismissal as a matter of law.  In fact, the decision in Rasul renders "the merits of [this] case ... so clear that expedited action is justified."  Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987).  Plaintiffs' claims fail for the following reasons.

---

[4] As further support for dismissing the Rasul plaintiffs' constitutional claims, the Court of Appeals also held that "it was not clearly established at the time of the alleged violations–nor even today–that a reasonable officer would know that Guantanamo is sovereign United States territory." See Rasul, 512 F.3d at 667.

**I.     Rasul confirms that Plaintiffs have no constitutional rights because they are non-resident aliens located outside the United States sovereign territory.**

In Rasul, the Court of Appeals reaffirmed that non-resident aliens located outside United States sovereign territory have no constitutional rights under the Fifth and Eighth Amendments.[5] Rasul, 512 F.3d at 663-66.  The Court of Appeals' holding in Rasul is additional binding precedent to the Court in an area where the law is already well-established.  Plaintiffs' constitutional claims must be rejected because "Supreme Court and Circuit precedent" – as well as this Court's recent rulings in a similar case[6] – hold that "non-resident aliens enjoy no constitutional rights."  Id. at 666 (citations omitted).  The Court of Appeals' reasoning in Rasul,

---

[5] See, e.g., Johnson v. Eisentrager, 339 U.S. 763, 781-85 (1950) (rejecting Fifth Amendment claim of an alien held outside the United States); United States v. Verdugo-Urquidez, 494 U.S. 259, 269 (1990) ("we have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States"); Boumediene v. Bush, 476 F.3d 981, 984 (D.C. Cir. 2007) ("Precedent in this court and the Supreme Court holds that the Constitution does not confer rights on aliens without property or presence in the United States"), cert. granted, 127 S. Ct. 3078 (2007); 32 County Sovereignty Comm. v. Dep't of State, 292 F.3d 797, 799 (D.C. Cir. 2002) (a "'foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise'") (quoting People's Mojahedin Org. of Iran v. Dep't of State, 182 F.3d 17, 22 (D.C. Cir. 1999)); Cuban Am. Bar Ass'n v. Christopher, 43 F.3d 1412, 1428 (11th Cir. 1995) (aliens detained at Guantanamo Bay, Cuba "have no First Amendment or Fifth Amendment rights"); Harbury v. Deutch, 233 F.3d 596, 602-04 (D.C. Cir. 2000) (alien claiming torture outside the U.S. had no rights under Fifth Amendment), rev'd in part on other grounds sub nom. Christopher v. Harbury, 536 U.S. 403 (2002).

[6] In re Iraq and Afghanistan Detainees Litigation, 479 F. Supp. 2d 85, 95 (D. D.C. 2007) (Hogan, C.J.) (Supreme Court and Circuit precedent "make clear that the Constitution's reach is not so expansive that it encompasses these nonresident aliens who were injured extraterritorially while detained by the military in foreign countries where the United States is engaged in wars"); see also footnote 5, above.

as well as its reasoning in <u>Boumedine</u>, concerning the reach of the Constitution fully support a dismissal of the Amended Complaint in this case.[7]

> **II.   Under <u>Rasul</u>, even assuming non-resident aliens outside the United States have constitutional rights, Plaintiffs' constitutional claims are barred by qualified immunity.**

The Court of Appeals in <u>Rasul</u> alternatively held, consistent with Supreme Court precedent, that even if the detainee plaintiffs in that case had constitutional rights, the <u>Bivens</u> claims are still barred by qualified immunity.  Citing prior Supreme Court and Circuit precedent, the Court of Appeals held that it was not clearly established at the time of the alleged misconduct that aliens outside sovereign United States territory possessed constitutional rights.  <u>Rasul</u>, 512 F.3d at 666-67.  Rejecting plaintiffs' contention that a reasonable person would have been on notice merely because the "prohibition on torture is universally accepted," the Court of Appeals emphasized that "[t]he issue we must decide ... is whether the rights ... were clearly established at the time of the alleged violations." <u>Id.</u> at 666.  No legal authority could "support[] a conclusion that military officials would have been aware, in light of the state of the law at the time [2002-2004], that detainees [in Cuba] should be afforded the [constitutional] rights they now claim." <u>Id.</u>

---

[7] Even if the Supreme Court in <u>Boumediene</u>, were to reverse the Court of Appeals and find that, based on the unique status of Guantanamo Bay, the aliens detained there should be treated as within United States sovereign territory, and should, therefore, be able to invoke rights under the Constitution, that would <u>not</u> reverse the long line of Supreme Court and Circuit precedent, <u>see</u> footnote 5, above, which establish the general rule that aliens outside the United States may not invoke rights under the Constitution.  In any event, as discussed herein, under <u>Rasul</u> it is clear that Defendants would have the right to qualified immunity.  On March 7, 2008, Plaintiffs filed a Motion for Further Stay pending final resolution of <u>Rasul</u> and <u>Boumediene</u>.  <u>See</u> Docket No. 25.  Defendants' opposition to that motion is forthcoming, but even in the unlikely event one or both cases were reversed it is well-established that Defendants are entitled to qualified immunity.

Not surprisingly, the District Court reached the same conclusion in Iraq Detainees Litig. months earlier, when it dismissed the constitutional claims in that action. See 479 F. Supp. 2d at 108-10. In Iraq Detainees Litig., the District Court stressed, like the Court of Appeals later did in Rasul, that "the cases make clear that what must be 'clearly established' is the constitutional right," id. at 109 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)), and that "[t]he focus is on whether '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). At the time of the alleged violations in the Iraq Detainees Litig. case, "no constitutional right could be invoked by the plaintiffs; as a result, no reasonable official could have understood that what he was doing violated the Fifth Amendment as it applied to them, regardless of whether the defendants' conduct otherwise was illegal under some other source of law." Id. at 109.

Like the plaintiffs in Rasul and in Iraq Detainees Litig., Plaintiffs are non-resident aliens who were detained outside United States sovereign territory. If a reasonable military officer would not have known that those detained in Afghanistan and/or at Guantanamo between 2002 and 2004 were entitled to assert constitutional rights, as the Court of Appeals held in Rasul, a reasonable military officer could not have known that individuals detained in the same locations and in the course of the same military operations during similar periods were entitled to such protections. For that reason, the Court of Appeals' holding in Rasul regarding qualified immunity controls here and Plaintiffs' Amended Complaint should be dismissed.

### III.  Plaintiffs' constitutional claims are further barred because of the special factors inherent in foreign policy, especially during a time of war.

Judge Brown's concurrence in Rasul explained that special factors also foreclosed the exact types of claims Plaintiffs are pursuing here, because, *inter alia*, "[p]ermitting damage suits by detainees may allow our enemies to '*obstruct the foreign policy of our government*.'"  Rasul, 512 F.3d at 673 (Brown, J., concurring) (citing Sanchez-Espinoza v. Reagan, 770 F.2d 202, 209 (D.C. Cir. 1985) (emphasis added)); see also Iraq Detainees Litigation, 479 F. Supp. 2d at 103-04.  Since the special factors in Rasul foreclosed a Bivens action, the concurrence reasoned, there was no need to address the underlying merits of plaintiffs' constitutional claims.  Rasul, 512 F.3d at 672 (Brown, J., concurring).  Because the same special factors are present here, Plaintiffs' constitutional claims are barred and the Court need not enquire further into the underlying merits.

Under Bivens a damages action for alleged constitutional violations may only be fashioned by a court where there are no "special factors counsel[ing] hesitation."  Id. at 673 (quoting Chappell v. Wallace, 462 U.S. 296, 298 (1983) (citation omitted)).  Moreover, the Supreme Court has "consistently refused to extend Bivens liability to *any new context or new category of defendants*."  Id. at 672 (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68-69 (2001) (emphasis added)).  As explained in Sanchez-Espinoza:

> [T]he special needs of foreign affairs must stay our hand in the creation of damage remedies against military and foreign policy officials for allegedly unconstitutional treatment of foreign subjects causing injury abroad.

Rasul, 512 F.3d at 673 (Brown, J., concurring) (quoting Sanchez-Espinoza, 770 F.2d at 209); see also Iraq Detainees Litigation, 479 F. Supp. 2d at 106.  Judicial "intrusion" into military affairs is "inappropriate" regardless whether Congress has provided an adequate remedy for a plaintiff's injuries.  Iraq Detainees Litigation, 479 F. Supp. 2d at 106 (quoting United States

v. Stanley, 483 U.S. 669, 683 (1987)).  Finally, Judge Brown correctly identified that the impact of these factors "cannot be ignored" and concluded "[j]udicial involvement in this delicate area could undermine ... military and diplomatic efforts and lead to 'embarrassment of our government abroad.'"  Rasul, 512 F.3d at 673 (Brown, J., concurring); see also Baker v. Carr, 369 U.S. 186, 226 (1962).

To allow Plaintiffs' constitutional claims to proceed impedes upon the separation-of-powers principle and interferes with the President's foreign policy during a time of war.  Rasul, 512 F.3d at 673 (Brown, J., concurring).  The concurrence is not contrary to the Rasul majority, but rather demonstrates the correct process for first analyzing Plaintiffs' ability to raise constitutional claims instead of proceeding without consideration to the merits of those claims.  Accordingly, because of the inescapable special factors inherent in this case which counsel hesitation against creating a new action for detainees, Plaintiffs' constitutional claims must be dismissed.

> **IV.  Plaintiffs' claims under the ATS, the Geneva Conventions, and the Vienna Convention are also foreclosed by Rasul because they are not statutes under which recovery may be obtained against a federal employee and are barred by the Westfall Act.**

In Rasul, the Court of Appeals held that the Westfall Act applies to international law claims for torture and abuse brought by non-resident, alien detainees against high-ranking military officers pursuant to the ATS and the Geneva Conventions.  The Westfall Act makes the remedies under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, "exclusive of any other civil action or proceeding for money damages" for any tort committed by a federal official or employee "while acting within the scope of his office or employment."  Rasul, 512 F.3d at 655 (quoting 28 U.S.C. § 2679(b)(1)).  The holding in Rasul requires that

because Defendants were acting within the scope of their employment at the time of the alleged conduct,[8] Plaintiffs' claims under the ATS, Geneva Conventions, and the Vienna Convention should be dismissed for lack of jurisdiction for failure to exhaust administrative remedies.[9]

The Court of Appeals rejected the Rasul plaintiffs' argument that the alleged conduct should not be deemed within the scope of defendants' employment because the Westfall Act was not intended to cover violations of *jus cogens* norms (such as the prohibition against torture) or "seriously criminal" conduct. Rasul, 512 F.3d at 657-58. It held that "the underlying conduct—here, the detention and interrogation of suspected enemy combatants—is the type of conduct the defendants were employed to engage in." Id. at 658. "Therefore, the alleged tortious conduct was incidental to the defendants' legitimate employment duties." Id. at 659. "[T]he serious criminality of the defendants' alleged conduct" does not preclude application of Westfall Act immunity. See id. at 659-60; see also 28 U.S.C. §§ 2679(b) and (d)(1).

As every court that has addressed the issue has recognized, ATS claims clearly do not qualify for the Westfall Act's exception, see 28 U.S.C. § 2679(b)(2) (the exception only authorizes individual capacity actions against federal employees for a violation of the Constitution or of a United States statute under which such action against an individual is authorized), because the ATS "is a jurisdictional statute creating no new causes of action." Sosa v. Alvarez-Machain, 542 U.S. 692, 724 (2004). Under Sosa, it is indisputable that the ATS is not a federal statute that authorizes recovery against a federal employee. Nor is the Geneva

---

[8] The Attorney General has certified that each Defendant was acting within the scope of his or her employment at the time of the alleged violations. See Attachment 1.

[9] The Amended Complaint fails to state that Plaintiffs exhausted their administrative remedies under the FTCA, as required prior to filing suit. See Am. Compl.

Convention a "statute of the United States," within the meaning of § 2679(b)(2)(B). See Iraq Detainees Litig., 479 F. Supp. 2d at 112-13; see also Bansal v. Russ, 513 F. Supp. 2d 264, 280 (E.D. Pa. 2007). While not expressly addressing the application of the statutory exception to such claims, the Court of Appeals in Rasul held that "the Geneva Conventions claim is . . . precluded by the Westfall Act." Rasul, 512 F.3d at 663. Accordingly, Plaintiffs have no judicially enforceable rights under the Geneva Conventions, or for the same reasons, under the Vienna Convention.[10]

Because controlling Supreme Court precedent makes it clear that claims under the ATS, the Geneva Conventions, and the Vienna Convention grant no substantive rights to Plaintiffs and are barred by the Westfall Act, Plaintiffs' claims based on them should be dismissed.

**V.    Rasul bars Plaintiffs' RFRA claims because it held non-resident aliens were not "persons" under RFRA.**

The Rasul holding also summarily forecloses Plaintiffs' claim under RFRA. The Court of Appeals held that because the plaintiffs in Rasul were non-resident aliens located outside the United States, they were not "persons" within the meaning of RFRA. Rasul, 512 F.3d at 668, 672. "We believe that RFRA's use of 'person' should be interpreted consistently with the Supreme Court's interpretation of 'person' in the Fifth Amendment and 'people' in the Fourth Amendment to exclude non-resident aliens." Id. at 671-72. Therefore, as non-resident aliens,

---

[10] Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006), is not to the contrary. Rather, there, the Court assumed that the Geneva Convention provided no judicially enforceable rights but found instead that certain Convention rights had been incorporated by statute. Id. at 2794. The Supreme Court did not disturb the venerable rule that treaties are presumed not to create rights judicially enforceable by private parties. See, e.g., Head Money Cases, 112 U.S. 580, 597-98 (1884); Holmes v. Laird, 459 F.2d 1211, 1220-22 (D.C. Cir. 1972).

Plaintiffs in the current action are not entitled to RFRA's protections and Plaintiffs' RFRA claim must be dismissed.

> **VI. Because <u>Rasul</u> and Supreme Court and Circuit precedent bar all of Plaintiffs' claims, Plaintiffs cannot claim a conspiracy to deny equal protection of the law under the Federal Civil Rights Act.**

Plaintiffs are also not entitled to the protections of the Federal Civil Rights Act. As demonstrated above, it is well-settled that the non-resident alien Plaintiffs do not have constitutional rights. As a result, they cannot claim a denial of any equal protection rights under the Constitution. Moreover, Plaintiffs' single, conclusory allegation Defendants acted in concert with intent, <u>see</u> Am. Compl. ¶ 187, even in the light most favorable to Plaintiffs, is "insufficient to establish a court's jurisdiction under the conspiracy theory[]" of 42 U.S.C. § 1985(3). <u>See</u> <u>Islamic American Relief Agency v. Unidentified FBI Agents</u>, 394 F. Supp. 2d 34, 59 (D. D.C. 2005), <u>aff'd</u> <u>in</u> <u>part</u>, 477 F.3d 728 (D.C. Cir. 2007). Accordingly, Plaintiffs' Federal Civil Rights Act claim should be dismissed.

## CONCLUSION

Plaintiffs' claims are squarely foreclosed by <u>Rasul</u>, as well as Supreme Court precedent. Accordingly, either the Court lacks subject matter jurisdiction to hear Plaintiffs' claims under Rule 12(b)(1) and/or the Plaintiffs have failed to state claims upon which relief may be granted under Rule 12(b)(6). Defendants, therefore, respectfully request that the Court dismiss Plaintiffs' Amended Complaint with prejudice. As required by Local Rule 7(c), a proposed order is at Attachment 2.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General, Civil Division

C. FREDERICK BECKNER, III

        Deputy Assistant Attorney General, Civil Division

        TIMOTHY P. GARREN
        Director, Torts Branch, Civil Division

        */s/ James G. Bartolotto*
        JAMES G. BARTOLOTTO
        DC Bar Member No. 441314
        JAMES R. WHITMAN
        Wis. Bar Member No. 1036757
        Trial Attorneys
        United States Department of Justice
        Torts Branch, Civil Division
        P.O. Box 7146
        Ben Franklin Station
        Washington, D.C. 20044-7146
        *james.bartolotto@usdoj.gov*
        Tel:  (202) 616-4174
        Fax:  (202) 616-4314
        *Attorneys for the Defendants*

Dated: March 10, 2008


## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on March 10, 2008, I electronically filed with the Clerk of the Court, by using the Court's CM/ECF system, the foregoing "DEFENDANTS' MOTION TO DISMISS."

        */s/ James G. Bartolotto*
        JAMES G. BARTOLOTTO
        JAMES R. WHITMAN
        Trial Attorneys
        United States Department of Justice
        Torts Branch, Civil Division
        P.O. Box 7146
        Ben Franklin Station
        Washington, D.C. 20044-7146
        *Attorneys for the Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YUKSEL CELIKGOGUS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 06-CV-1996 (HHK) |
| ) | |
| DONALD RUMSFELD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATION OF SCOPE OF EMPLOYMENT

I, Timothy P. Garren, Director, Torts Branch, Civil Division, United States Department of Justice, acting pursuant to the provisions of 28 U.S.C. § 2679(d)(2), and by virtue of the authority vested in me by 28 C.F.R. § 15.4 (2007), hereby certify that I have read the complaint in this action. On the basis of the information now available, I find that at the time of the conduct alleged in the complaint the individual defendants, former Secretary of Defense Donald Rumsfeld, former Chairman, Joint Chiefs of Staff General Richard Myers, General James T. Hill, General Bantz J. Craddock, Major General Michael Lehnert, Major General Michael E. Dunlavey, Major General Geoffrey Miller, Brigadier General Jay Hood, Rear Admiral Harry B. Harris, Jr., Colonel Terry Carrico, Colonel Adolph McQueen, Brigadier General Nelson J. Cannon, Colonel Michael I. Bumgarner, Colonel Wade F. Dennis (incorrectly sued herein as "Dennis Wade"), and Mr. Esteban Rodriguez, were acting within the scope of their employment as employees of the United States.

Dated: March 7, 2008

TIMOTHY P. GARREN
Director
Torts Branch, Civil Division
U.S. Department of Justice

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| YUKSEL CELIKGOGUS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06-CV-1996 (HHK) |
| DONALD RUMSFELD, *et al.*, | ) ) ) | Document No.: |
| Defendants. | ) ) ) | |

### [PROPOSED] ORDER

Upon consideration of the Defendants' Motion to Dismiss, and any response thereto, it is hereby **ORDERED** that the Defendants' Motion to Dismiss is **GRANTED**; and it is

**FURTHER ORDERED** that, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiffs' claims against former Secretary of Defense Donald Rumsfeld, former Chairman, Joint Chiefs of Staff General Richard Myers, General James T. Hill, General Bantz J. Craddock, Major General Michael Lehnert, Major General Michael E. Dunlavey, Major General Geoffrey Miller, Brigadier General Jay Hood, Rear Admiral Harry B. Harris, Jr., Colonel Terry Carrico, Colonel Adolph McQueen, Brigadier General Nelson J. Cannon, Colonel Michael I. Bumgarner, Colonel Wade F. Dennis (incorrectly sued herein as "Dennis Wade"), and Mr. Esteban Rodriguez, are dismissed with prejudice and Plaintiffs' claims against the United States are dismissed without prejudice.

**SO ORDERED**.

Dated _____, 2008        _____
HENRY H. KENNEDY, JR.
United States District Judge