UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____

**YUKSEL CELIKGOGUS**, *et al*, )
)
    Plaintiffs, )
)   **06-CV-1996 (HHK)**
v. )
)
**DONALD RUMSFELD**, *et al*, )
)
    Defendants. )
_____)

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR FURTHER STAY

### I.   A Further Stay Is Warranted Under *Landis*.

As plaintiffs explained in their opening brief, a further stay is warranted in this case until the *Rasul v. Myers*[1] and *Boumediene v. Bush*[2] cases are finally resolved, in order to preserve the time and effort expended by the Court, counsel and the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). As defendants argued in their initial Motion for Stay — and as this Court recognized when it granted that motion — the legal issues in *Rasul* are likely to affect the claims in this case. Indeed, defendants rely on the Court of Appeals opinions in *Rasul* and *Boumediene* in their recently-filed Motion to Dismiss in this case (Dkt. No. 27)[3]

---

[1] *Rasul v. Myers*, Nos. 06-5209, 06-5222 (D.C. Cir.), originally captioned "*Rasul v. Rumsfeld*."

[2] *Boumediene v. Bush*, Nos. 06-1195/06-1196 (U.S.).

[3] Motion to Dismiss, at p. 7 n.7 (*Boumediene*), and throughout (*Rasul*).

In their Opposition to this motion to stay ("Opp. Br."), defendants do not even address the legal standard for a discretionary stay, as explained in *Landis* or any other relevant authority, much less explain why it is not satisfied here.  Instead, they simply assert that review in *Rasul* is "unlikely," and that a ruling by the United States Supreme Court in *Boumediene* will not have any impact on this case.  But as the Court explained in *Landis*, a stay is warranted even where proceedings in the other court "may not settle every question of fact and law . . . but in all likelihood . . . will settle many and simplify them all."  *Landis*, 299 U.S. at 256.  En banc review has been denied in *Rasul*, and plaintiffs in that case are likely to petition for certiorari.  As discussed below, decisions (one way or another) in *Rasul* and *Boumediene* will affect the resolution of many issues in this case.

Moreover, defendants do not demonstrate that they would suffer any unfair prejudice as a result of a limited further stay.  Briefing and oral argument have been completed in *Boumediene*.  The burden of any delay is further minimized because defendants in this case are also parties in both *Rasul* and *Boumediene*. *Cf. Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3rd Cir. 1988) ("The considerations counseling moderation in *Landis* do not apply in this case where the stay is to await arbitration and the party objecting to the stay is also a party to the arbitration.").  The benefits to the Court, counsel and the parties of waiting to decide this case until the legal issues have been settled in *Rasul* and *Boumediene* plainly outweigh the limited delay caused by a stay.

**A. The Supreme Court's Decision in *Boumediene* Will Affect the Issues in This Case.**

One of the key issues in *Boumediene* is the extent of constitutional protections to which Guantánamo detainees are entitled based on the United States government's control over Guantánamo.  Other courts have already determined that the issue of the U.S. government's sovereignty over Guantánamo does not bar constitutional claims, and

2

it is likely to be a central factor in the Supreme Court's decision.[4]  Defendants ignore the impact that a reversal on this point in *Boumediene* would have on this case.

Thus, defendants argue that "the pendency of *Boumediene* provides no reason to delay disposition of this case" because:

> even if the Supreme Court in *Boumediene* were to . . . find that . . . aliens detained [at Guantánamo] should be treated as within United States sovereign territory, and should, therefore, be able to invoke rights under the Constitution, that would still not reverse the long line of Supreme Court and Circuit precedent, which establishes the general rule that aliens outside the United States **(such as aliens in Iraq or Afghanistan)** may not invoke rights under the Constitution.

Opp. Br. 3 (emphasis added).  This non-sequitur regarding Iraq and Afghanistan appears to stem from defendants' misapprehension, reflected in their Motion to Dismiss, that certain plaintiffs "detained . . . by the United States military in the course of ongoing hostilities in Afghanistan and Iraq" were never detained at Guantánamo.[5]  But as

---

[4] *See, e.g., Haitian Centers Council, Inc. v. McNary*, 969 F.2d 1326, 1345 (2d Cir. 1992) (holding that *Johnson v. Eisentrager,* 339 U.S. 763 (1950), did not bar aliens detained at Guantánamo from pursuing Fifth Amendment claims), *vacated as moot on other grounds, Sale v. Haitian Centers Council, Inc.*, 509 U.S. 918 (1993); *and U.S. v. Wilmot*, No. 13,787, 1960 WL 4548 (CMA 1960) (holding that U.S. air base in Japan, like "American Samoa, Guantanamo Bay in Cuba and the Canal Zone" is in effect U.S. sovereign territory).  The Supreme Court has also recognized a distinction between Guantánamo detainees and the petitioners in *Eisentrager.  See Rasul v. Bush*, 542 U.S. 466, 476 (2004) (distinguishing Guantánamo detainees from the petitioners in *Eisentrager* in part because the former "have been imprisoned in territory over which the United States exercises exclusive jurisdiction and control."); *see also id.* at 487 (Kennedy, J., concurring) ("The facts here are distinguishable from those in *Eisentrager* in two critical ways, leading to the conclusion that a federal court may entertain the petitions.  First, Guantanamo Bay is in every practical respect a United States territory, and it is one far removed from any hostilities.").  The Court has declined to adopt a dissenting position that Guantánamo is "clearly" outside of U.S. sovereign territory.  *See Hamdan v. Rumsfeld*, 548 U.S. 557, ___; 126 S. Ct. 2749, 2818 (2006) (Scalia, J., dissenting) (citing his own dissent in *Rasul*, 542 U.S. at 500-05, in support).

[5] Motion to Dismiss 3.  Defendants' erroneous contention regarding plaintiffs not being at Guantánamo is found in the same motion at page 3 n.3 ("Plaintiffs Hasam and Muhammad were not detained at Guantanamo").

3

defendants ultimately conceded in their errata to that motion, all plaintiffs were detained at Guantánamo.[6]  That some plaintiffs *also* were detained at other facilities might limit the scope of those plaintiffs' claims (as to the other facilities), but it would not eliminate them.  Because all plaintiffs were detained at Guantánamo, a ruling by the Supreme Court in *Boumediene* on the scope of constitutional protections will have a direct impact on this case.

Defendants next assert that the panel in *Rasul* "found that the pendency of *Boumediene* was not a ground for delaying disposition in that case."  Opp. Br. at 3.  But in neither the footnote defendants cite, nor anywhere else in the opinion, does the Court of Appeals discuss the issue of a potential stay.  Cases do not stand for propositions not considered therein.  *LaShawn A. v. Barry*, 87 F.3d 1389, 1396 n.7 (D.C. Cir. 1996). Although the footnote in question does not discuss a stay, it does discuss the *Rasul* panel's reliance on the panel decision in *Boumediene*.  *Rasul*, 512 F.3d at 665 n.15.  In other words, the panel in *Rasul* explicitly recognized that issues decided — and to be decided — in *Boumediene* bear on issues in *Rasul*, which in turn bear on this case.

Because the decision in *Boumediene* could directly affect the scope of plaintiffs' constitutional rights claims in this case, this Court should order a stay until the Supreme Court issues its decision in *Boumediene*.

**B. Resolution of the *Rasul* Case Will Have an Impact on The Issues In This Case.**

Plaintiffs' opening brief pointed out that a reversal in *Rasul* would affect the resolution of several issues in this case, including:  (1) whether Guantánamo detainees are "persons" under Religious Freedom Restoration Act ("RFRA"); (2) whether defendants' conduct falls within the scope of their employment; and (3) whether qualified immunity

---

[6] *See* Errata Re: Defendants' Motion to Dismiss ("Plaintiffs . . . Hasam and . . . Muhammad . . . claim they were detained for over four years at military facilities . . . at Guantanamo[.]") (Dkt. No. 29).

4

would apply to any or all of their conduct.[7]  Only a small section of the Opposition (pp. 6-7) even addresses the impact of a reversal in *Rasul*.  Defendants apparently concede that a reversal on issue number (3) would affect this case, because they make no argument to the contrary and rely solely on the unwarranted assumption that such a reversal is "unlikely."[8]  Defendants' arguments that reversal on issue (1) or (2) would have no impact here are unpersuasive.

If the Supreme Court grants review in *Rasul* and determines that Guantánamo detainees are "persons" under RFRA, it would make clear (in line with the district court's holding in *Rasul*) that plaintiffs are entitled to pursue their claims under the statute. Defendants' arguments to the contrary lack merit.

*First*, defendants argue that a reviewing court, even if it were to reverse the majority opinion, *might* then choose to adopt the position expressed in the concurring opinion that literal application of RFRA's plain language would create a result "demonstrably at odds" with the intentions of its drafters, allowing the court to ignore the plain meaning of the statute.  Opp. Br. 6, quoting *Rasul v. Myers,* 512 F.3d 644, 676 (D.C. Cir. 2008) (Brown, J., concurring).  Of course there is another possible outcome. And — aside from the obvious fact that the concurrence does not bind this Court, much less the Supreme Court — neither the concurrence nor defendants here show that application of RFRA to Guantánamo detainees would "defeat the plain purpose of the

---

[7] Although the Court of Appeals denied en banc review of *Rasul* after plaintiffs filed this motion, the plaintiffs in *Rasul* are likely to petition for certiorari on these same issues.  Because defendants filed their Opposition to this motion before the denial, and thus did not have occasion to raise those arguments as to certiorari, this reply proceeds as if defendants would have raised the same issues as to certiorari that they earlier raised as to en banc review.

[8] As discussed in Section II, below, the balance of defendants' Opposition simply rehashes their motion to dismiss the amended complaint, focusing on the purported impact of *Rasul* if it is *not* reversed.

statute," the standard required before courts will ignore the plain meaning of a statute. *Bob Jones Univ. v. U.S.*, 461 U.S. 574, 586 (1983); *see also Engine Mfrs. Ass'n v. EPA.*, 88 F.3d 1075, 1089(D.C. Cir. 1996) ("the court's role is not to 'correct' the text so that it better serves the statute's purposes, for it is the function of the political branches not only to define the goals but also to choose the means for reaching them." (citation omitted)).[9] Indeed, the statute's own "Rules of Construction" support a broad construction against burdens on religious exercise.[10]

*Second*, defendants argue that a reversal on the "persons" issue would not affect this case because, under RFRA, they would be entitled to qualified immunity. Opp. Br. 4. But the only authority they cite for the application of qualified immunity to RFRA claims is the *Rasul* panel *concurrence*. The concurrence is not binding authority for this or any other proposition. *Fulani v. Brady*, 935 F.2d 1324, 1327 (D.C. Cir. 1991). Nor is

---

[9] Nor does an actual review of the legislative history support the concurrence's view that the drafters' intent "was not to increase the universe of individuals protected by RFRA." At best for defendants, the legislative history leaves an open question on this point: the history the concurrence cites, the House Report on the Religious Liberty Protection Act of 1999, H.R. REP. NO. 106-219, contains a statement of purpose that references testimony before the House Judiciary Committee regarding a case in which aliens held in an unspecified INS detention facility were forced to eat pork in violation of their religious practices, suggesting an intention that RFRA apply to non-citizens in U.S. custody. *See* Testimony of Marc D. Stern before the Subcommittee on the Constitution of the Committee on the Judiciary, United States House of Representatives, March 26, 1998.

[10] *See* 42 U.S.C. § 2000cc-3 ("Rules of Construction"), which provides, in relevant part:
    (b) Religious Exercise Not Regulated
    Nothing in this Chapter shall create any basis for restricting or burdening religious exercise . . .
    . . . .
    (g) Broad Construction
    This Chapter should be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by [its] terms and the Constitution.

it clear that qualified immunity even *applies* to RFRA claims, as the *Rasul* concurrence pointed out. *Rasul*, 512 F.3d at 676 n.5 (Brown, J., concurring) (citing *Kwai Fun Wong v. U.S.*, 373 F.3d 952, 977 (9th Cir. 2004). Moreover, in addition to monetary relief, plaintiffs here seek declaratory relief, to which qualified immunity does not apply in any event. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Finally, even if qualified immunity could theoretically apply to plaintiffs' RFRA claims, the Supreme Court may well agree with the district court's holding in *Rasul* — that the RFRA claims involved well-established rights, and therefore defendants were not entitled to qualified immunity.[11]

*Third*, defendants speculate that even in the absence of qualified immunity, "special factors" would bar plaintiffs' claims. Opp. Br. 4 n.2. Again, the only authority they cite for this proposition is the *Rasul* panel concurrence. Defendants provide no support for their conjecture that a reviewing court would adopt a contention that the *Rasul* majority rejected. The most time- and cost-effective means to find out what a reviewing court will do, however, is not to speculate, but, instead, to grant a further stay in this case until the Supreme Court has resolved the relevant issues.

---

[11] Even if defendants could show that these rights were not always known to defendants, they could not show that defendants remained ignorant until certain plaintiffs were released in late 2006, well after changes in the law — including enactment of the Detainee Treatment Act and the decision in *Rasul v. Bush*, 542 U.S. 466 (2004) — had further clarified these rights. Indeed, defendants appear to concede this timing point: In discussing whether military officials would have been aware of the rights plaintiffs claim, defendants limit their discussion to the state of the law from 2002-2004. Opp. Br. 4. Because of changes in the law, any rights that arguably were not well-established before 2004 *were* well-established after 2004, and thus plaintiffs' claims, *which include claims based on conduct after 2004*, could not be barred by qualified immunity as to the RFRA or *Bivens* claims.

**II.     Defendants' Predictions Of The Likelihood Of Review Are Immaterial.**

The bulk of defendants' Opposition merely rehashes its Motion to Dismiss, presented as predictions regarding the likelihood of further review in *Rasul*. At bottom, defendants' arguments (Opposition 4-6) are that the panel opinion in *Rasul* mandates dismissal of this case.[12] However, the merits of defendants' motion to dismiss *absent* further action in *Rasul* and *Boumediene* is irrelevant to this Court's determination on this motion for further stay. Rather, as discussed above, the key factors are those set out in *Landis*, and they weigh in favor of a stay.

*First*, defendants argue that a reviewing court is "unlikely" to reverse the panel's decision on scope of employment for Westfall Act protection. Opp. Br. 5. The "likelihood" of reversal is not a factor in the *Landis* test. Moreover, contrary to defendants' argument, reversal on this issue would follow Circuit precedent. Throwing detainees' Korans in the toilet, forcing them to strip naked, prohibiting them from praying, forcibly shaving their beards and sexually humiliating them are each different *in kind* — and thus not incidental to — the work defendants were authorized to do: housing, guarding and interrogating detainees. Under established Circuit precedent, "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized." *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (*per curiam*). Accordingly, reversal on this issue would bring the decision in line with the standard set forth in *Ballenger*, and defendants' "likelihood" argument is meritless.

*Second*, defendants argue that review in *Rasul* is "unlikely" because the panel's ruling that Guantánamo detainees have no rights under the Constitution is "based on established Supreme Court and Circuit precedent." Opp. Br. at 2-3. But the only cases

---

[12] This argument also ignores the fact that a petition for certiorari by the *Rasul* plaintiffs is highly likely.

they cite that relate to Guantánamo are the *Boumediene* panel opinion (further underscoring the impact the Supreme Court's opinion in that case could have on this case) and an opinion from the Eleventh Circuit dealing with aliens in INS custody, *Cuban Am. Bar Ass'n v. Christopher*, 43 F.3d 1412, 1428 (11th Cir. 1995). The issue of whether the United States exercises "sovereignty" over Guantánamo was not addressed in *Cuban American Bar Association*. As discussed above (note 3), other courts have come out differently on this point (including the Supreme Court in *Rasul v. Bush*), and it is likely to be addressed by the Supreme Court, either in *Boumediene* or on review of *Rasul*. A limited stay until this issue is resolved would promote efficiency in this case.

*Third*, as plaintiffs will explain in greater detail in their Opposition to defendants' Motion to Dismiss, defendants are wrong to suggest that this case can speedily be dismissed absent a stay. Plaintiffs' claims could proceed even under current Circuit law — i.e., even if the Supreme Court were to deny certiorari in *Rasul*. Although this case and *Rasul* have several legal issues in common, which merit a further stay in this case, there are nonetheless important factual distinctions that would prevent dismissal here. For example, unlike the situation in *Rasul*, defendants continued to detain certain plaintiffs in this case without cause *after* they were determined not to be enemy combatants.[13]

Moreover, even if defendants could otherwise obtain a dismissal in this Court in the brief interval at issue here (between the filing of plaintiffs' Opposition to the Motion to Dismiss and any hearing ordered by this Court, on the one hand, and June 30, 2008, the last date on which the *Boumediene* opinion could be issued, on the other hand), this case would be active on appeal when the decision in *Boumediene* (and if certiorari is granted, in *Rasul*) was handed down. Any change in (or even clarification of) the law

---

[13] These differences also are discussed in plaintiffs' Reply in support of the Motion to Amend (at pp. 1-2).

could require further consideration of this case by the Court of Appeals and/or this Court. Staying this case pending final resolution of *Rasul* and *Boumediene* will allow this Court to resolve this case most efficiently, and will not prejudice defendants.

### III.    Conclusion

As explained above and in plaintiffs' opening brief, a further stay is warranted in this case. Defendants' Opposition provides no basis to deny a stay, and indeed does not even discuss the relevant legal standard. The Court should therefore grant plaintiffs' Motion for Further Stay.

Dated:  March 31, 2008

                    Respectfully submitted,

                    /s/ Shayana Kadidal
                    Shayana Kadidal [D.C. Bar No. 454248]
                    William Goodman
                    Carolyn Patty Blum
                    Michael Ratner
                    CENTER FOR CONSTITUTIONAL RIGHTS
                    666 Broadway, 7th Floor
                    New York, NY  10012
                    Tel:  (212) 614-6438
                    Fax:  (212) 614 6499

                    /s/ Robert A. Rosenfeld
                    Robert A. Rosenfeld [CA Bar No. 86970]
                    *(admitted pro hac vice)*
                    Neil A. F. Popovic [CA Bar No. 132403]
                    *(admitted pro hac vice)*
                    Russell P. Cohen [CA Bar No. 213105]
                    *(pro hac vice admission pending)*
                    HELLER EHRMAN LLP
                    333 Bush Street
                    San Francisco, CA  94104
                    Tel:  (415) 772-6000
                    Fax:  (415) 772-6264

/s/ Kit A. Pierson
Kit A. Pierson [D.C. Bar No. 398123]
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC  20036
Tel:  (202) 912-2000
Fax:  (202) 912-2020