UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____

**YUKSEL CELIKGOGUS**, *et al*,    )
                                   )
    Plaintiffs,          )
                                   )        06-CV-1996 (HHK)
v.                                 )
                                   )
**DONALD RUMSFELD**, *et al*,      )
                                   )
    Defendants.          )
_____)

<u>**PLAINTIFFS' REPLY IN SUPPORT OF**</u>

<u>**MOTION FOR LEAVE TO AMEND COMPLAINT**</u>

**I.   INTRODUCTION**

    Defendants' Opposition To plaintiffs' Motion For Leave To Amend Complaint ("Defendant's Opposition") is based on the false and unwarranted assumption that the *Celikgogus* plaintiffs cannot succeed on their claims as a matter of law, and, hence, virtually *any* proposed amendment would be futile. This assumption is not only premature but also wrong.

    First, the applicable law is unsettled. As discussed in plaintiffs' Motion For Further Stay ("Plaintiffs' Stay Motion") (Dkt. No. 25) and plaintiffs' Reply In Support of Motion For Further Stay (filed concurrently), decisions by the Supreme Court may significantly affect these claims.

    Second, even with that uncertainty, as we will explain more fully in plaintiffs' opposition to defendants' Motion To Dismiss (to be filed April 24, 2008), this case involves facts that differ from those considered in *Rasul v. Myers,* 512 F.3d 644 (D.C. Cir. 2008). Accordingly, even if the Supreme Court does not change the law, this Court should reach a different result here. In the present case, for example, two of the

plaintiffs, Zakirjan Hasam and Abu Muhammad, were subject to hearings before a Combatant Status Review Tribunal ("CSRT") created by the United States government in response to the mandate of the United States Supreme Court's ruling in *Rasul v. Bush,* 542 U.S. 466 (2004). Each was determined by the tribunal to be a non-enemy combatant. Yet for nearly two years after that determination, these plaintiffs' continued incarceration was the essence of an arbitrary and unwarranted detention; further, they continued to be mistreated and denied their constitutional rights. By contrast, none of the plaintiffs in *Rasul v. Myers* appeared before a CSRT nor received a non-enemy combatant classification.

   This case therefore presents an issue of first impression — the applicability of the Westfall Act to tortious misconduct by military officials at Guantánamo Bay occurring *after* an official non-enemy combatant status determination by a CSRT. Uniquely at issue in this present litigation is whether torture, arbitrary and prolonged detention, and other mistreatment of individuals affirmatively declared to be *non-enemy combatants* can be immunized from liability as activity "within the scope of employment" of military officials. Because allegations of post-CSRT misconduct are present here but not in *Rasul v. Myers,* defendants are incorrect in asserting that *Rasul v. Myers* is dispositive of the merits of plaintiffs' claims.

   Further, the timing of the conduct at issue in this case may also affect the defendants' ability to assert a defense based on qualified immunity, as the illegality of their conduct became that much clearer after (1) the enactment of the Detainee Treatment Act, (2) the decision in *Rasul v. Bush*, recognizing the right of Guantánamo detainees to challenge the legality of their detention in federal courts, and (3) the decision in *Hamdan v. Rumsfeld,* 548 U.S. 557 (2006), recognizing the applicability of Common Article 3 of the Geneva Conventions to the armed conflict with Al Qaeda and the Taliban. Finally, the plaintiffs here also assert claims not raised or addressed in *Rasul v. Myers*, such as violations of rights motivated by class-based animus against plaintiffs' religion under 42

U.S.C. § 1985(3) of the Federal Civil Rights Act and violations of rights to consular access under Article 36 of the Vienna Convention on Consular Relations.

Although leave to amend is to be freely given "when justice so requires," defendants argue that it should be denied here simply because they have moved to dismiss the operative complaint. Presupposing the outcome of the Court's consideration of their motion, defendants assert that the proposed amendments are futile. But this is not a situation where plaintiffs are trying (repeatedly) to plead around an identified flaw in the complaint. Rather, as discussed below, the Court has yet to rule on any of defendants' purported defenses, and the proposed amendments are merely intended to correct administrative errors with no prejudice to defendants. The Court should allow plaintiffs to amend their complaint regardless of how it might ultimately rule on defendants' Motion to Dismiss.[1]

## II. DISCUSSION

### A. Rule 15 of the Federal Rules of Civil Procedure Liberally Permits Amendments At Any Time.

The Supreme Court has made clear that "Rule 15(a) [of the Federal Rules of Civil Procedure] declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080, 1083-84 (D.C. Cir. 1998) (citing *Bank v. Pitt,* 928 F.2d 1108, 112 (11th Cir. 1991) for the proposition that a "district court's discretion to dismiss without leave to amend is 'severely restricted' by command of Rule 15(a) that such leave be 'freely given'"). Consistent with this mandate and with the strong judicial preference for resolving

---

[1] Plaintiffs have simultaneously moved for a further stay of these proceedings. If the Court grants a stay, it will not even reach defendants' Motion to Dismiss until certain ongoing appellate proceedings have been completed. In any event, Defendants' Motion to Dismiss should have no bearing on plaintiffs' Motion For Leave To Amend.

disputes based on full adjudication of the merits, amendments to pleadings can occur even after trial.[2] Here, of course, plaintiffs seek to amend before there have been any substantive rulings or any discovery. Indeed, this case has barely begun.

As explained in plaintiffs' Motion For Leave To Amend Complaint ("Plaintiffs' Motion"), the proposed amendments correct certain administrative errors: (1) the omission of the states of residence of two defendants — Esteban Rodriguez and Adolph McQueen (Amended Complaint (Dkt. No. 11) ¶¶ 25, 29); (2) the name of defendant Wade Dennis, mistakenly referred to as "Dennis Wade" (*id.* ¶ 28); (3) typographical errors in paragraph 16, which contains allegations regarding defendant Peter Pace (*id.* ¶ 16); and (4) the inadvertent omission of defendant Pace's name from the caption.[3] *See* Appendix B to Plaintiff's Motion. Courts regularly grant leave to amend in order to correct these types of minor technical errors.[4] Because these corrections will serve to

---

[2] For example, under Rule 15(b)(1), upon objection that evidence is not within issues raised in pleadings, the court may permit amendment to "aid in presenting the merits." Similarly, under Rule 15(b)(2), a party may move "*at any time, even after judgment* — to amend the pleadings to conform them to evidence and to raise an unpleaded issue." Fed. R. Civ. Pro. 15(b)(2) (emphasis added).

[3] Defendants note that the proposed Second Amended Complaint also adds defendants Pace, Craddock, Harris, Bumgarner, Dennis, and McQueen to allegations contained in paragraph 184. The proposed amendments correct the inadvertent omission of these defendants from this paragraph but do not enlarge the scope of plaintiffs' claims as these amended allegations are consistent with facts already reflected in paragraphs 16, 18, 23, 25, 27 and 28 of the Amended Complaint.

[4] Even in a case cited by defendants, *Caribbean Broadcasting Sys.,* 148 F.3d at 1082, leave to amend was granted to correct a technical error in the description of the plaintiff organization's ownership. *See also St. George v. Pinellas County*, 285 F.3d 1334, 1336 n.4 (11th Cir. 2002) (referring to grant of motion to amend complaint to correct scrivener's error, changing word "aware" to "unaware"); *United States v. South Martin Luther King Dr.*, 270 F.3d 1102, 1108 (7th Cir. 2001) (referring to grant of leave to amend to correct technical error regarding proper code citation authorizing forfeiture of automobiles); *Hill v. MacMillan/McGraw-Hill School Co.,* 102 F.3d 422, 423 (9th Cir.

*(Footnote continued)*

clarify the record, there is no reason to wait until more time has elapsed before conforming the pleadings to the evidence.[5]  In no way do these proposed amendments prejudice the defendants or preclude the presentation of any defenses — including a defense based on the statute of limitations — at this early stage of litigation.

### B. Plaintiffs' Proposed Amendments Are Not Futile.

Central to defendants' arguments is an improper assumption that plaintiffs' claims cannot survive as a matter of law.  Starting from this faulty premise, defendants argue that the proposed amendments cannot save the claims because they do not add any "new" facts and, therefore, are futile.  But defendants ignore the intended purpose of the amendments — to correct errors in order to clarify the record for adjudication, not to respond to defenses raised by defendants.  Further, the defendants improperly presuppose that the Court can and should prejudge the claims herein, even prior to the receipt of the Plaintiffs' opposition to the defendants' Motion to Dismiss.  *See SAES Getters S.p.A. v. Aeronex, Inc.,* 219 F.Supp.2d 1081, 1086 (S.D. Cal. 2002) (noting courts normally defer challenges to proposed pleading until after leave to amend is granted); *Netbula, LLC v. Distinct Corp.,* 212 F.R.D. 534, 549 (N.D. Cal. 2003)  (same).

#### 1. The Proposed Amendments Are Not Futile Because Relevant Law Is Unsettled.

This litigation does not present the situation in which a plaintiff seeks to amend a complaint even though the outcome of the claims is wholly predictable, without briefing

---

1996) (noting court granted leave to amend to correct typographical error changing word "mole" to "moll" when defendant refused to stipulate to amendment).

[5] Plaintiffs' Motion was filed before any responsive pleading was due.  *See* Plaintiffs' Motion at 4.  Contrary to defendants' assertion that this amendment is the fourth repetition of claims in light of an earlier action filed in this court (*Celikgogus v. Rumsfeld,* No. 1:05-CV-2480 (D.D.C.)), the proposed Second Amended Complaint represents only the third iteration of plaintiffs' claims as the claims in that other action were voluntarily dismissed *without prejudice*.  *See* Defendants' Opp'n at 6 & n.2.

or oral argument, based on a clear, unequivocal rule of law.  As explained in Plaintiffs' Stay Motion, the law regarding the types of claims at issue in this action remains unsettled pending the ultimate resolution of *Rasul v. Myers* and *Boumediene v. Bush,* Nos. 06-1195/06-1196 (U.S.) ("*Boumediene*").  *See* Plaintiffs' Stay Motion (Dkt. No. 25) at 2, 4-5. In *Rasul v. Myers,* plaintiffs will likely file a petition for *certiorari* addressing the same issues raised in their petition for rehearing *en banc*, *e.g.*, whether Guantánamo detainees are "persons" under the Religious Freedom Restoration Act ("RFRA"), whether torture and cruel, inhuman and degrading treatment are within the scope of employment of military officials, and whether military officers knew that torture and other mistreatment were  illegal.  *See* Appendix A to Plaintiffs' Stay Motion.  In *Boumediene,* the Supreme Court has received briefing and heard oral argument but has not yet ruled on the extent to which constitutional rights may be asserted by Guantánamo detainees.  *See* Plaintiffs' Stay Motion (Dkt. No. 25) at 2.  Because the relevant law is unsettled, the outcome of plaintiffs' claims here cannot be predicted with certainty.

     Not only is the law unsettled with respect to the rights of Guantánamo detainees who are classified as "suspected enemy combatants," as considered in *Rasul v. Myers* and *Boumediene*, the law is virtually uncharted when it comes to the claims in this case, which include allegations of torture and misconduct against individuals affirmatively determined by United States officials to be *non-enemy combatants*.  *See* Amended Complaint (Dkt. No. 11) ¶¶ 141-144 and 164-168.  As will be discussed in plaintiffs' opposition to defendants' Motion To Dismiss, whether post-CSRT misconduct by military officials can constitute immunized tortious activity "within the scope of employment" under the Westfall Act is an issue of first impression that has not been considered by the court in *Rasul v. Myers* or any other court.[6]

---

[6] The present case also includes claims not raised in *Rasul v. Myers,* such as violations of civil rights under 42 U.S.C. § 1985(3) and violations of rights to consular access under the Vienna Convention.  *See* Amended Compl. (Dkt. No. 11) at ¶¶ 212-216,
*(Footnote continued)*

## 2. The Proposed Amendments Are Not Futile Because This Court Has Not Yet Ruled On Defendants' Motion To Dismiss.

The issue in plaintiffs' motion to amend is *not* whether the proposed amendments will overcome flaws defendants have raised in a motion to dismiss. The proposed amendments are technical in nature, and the Court has not ruled on any motion to dismiss. Indeed, no motion to dismiss had even been filed at the time plaintiffs filed their motion to amend.[7] In *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,* 366 F.3d 930 (D.C. Cir. 2004), a case cited by defendants, the defendants had moved to dismiss for lack of subject matter jurisdiction because the plaintiff lacked standing to pursue its claims. *Id.* at 936. Only *after* briefing on the motion to dismiss was completed and *after* the parties argued the motion before the district court did plaintiff seek to amend the complaint. The court found the proposed amendments insufficient to cure plaintiff's lack of standing. *Id.*

Similarly, in *James Madison Ltd v. Ludwig,* 82 F.3d 1085 (D.C. Cir. 1996), also cited by the defendants (Defendants' Opp'n at 4, 5), the court ruled on the plaintiff's motion to amend in the context of both the merits of plaintiff's claims (based on the facts

---

238-241. Furthermore, in contrast to *Rasul v. Myers,* the conduct at issue here occurred after enactment of the Detainee Treatment Act and after the decision in *Rasul v. Bush*, 542 U.S. 466 (2004), which characterized allegations describing extended detention without access to counsel and without being charged with any wrongdoing as "unquestionably describe[ing] 'custody in violation of the Constitution or laws or treaties of the United States.'" *Id.* at 484 n.15 (citation omitted). The unique timing of this case may thus also affect the defendants' ability to rely on a defense based on qualified immunity.

[7] Even if a claim fails to survive a motion to dismiss, the result is not necessarily fatal, for a court can grant leave to amend *after* granting a motion to dismiss. *See Caribbean Broadcasting Sys.,* 148 F.3d at 1084 (citing *Rosen v. TRW, Inc.,* 979 F.2d 191 (11th Cir. 1992) for the proposition that "leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim"); *id.* (citing *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery,* 72 F.R.D. 556, 561 (S.D.N.Y. 1976) ("[A]rtless drafting of a complaint should not allow for the artful dodging of a claim.")).

alleged in the complaint), and the statement of undisputed facts submitted by the defendant with its summary judgment motion. *Id.* at 1099. In contrast to this case, the courts in *National Wrestling* and *James Madison* had to evaluate proposed amendments against fully developed defenses the amendments were intended to overcome. That is not the situation here. In this case, in the absence of the plaintiffs' response or any further briefing and argument, the defenses raised in defendants' Motion To Dismiss have not been fully developed. Moreover, the proposed amendments are not directed at any defenses raised to date. Accordingly, those as yet unadjudicated defenses have no bearing on the appropriateness of plaintiffs' proposed amendments, and any argument that plaintiffs' claims are foreclosed is premature.[8]

    **C.    The Proposed Amendment Adding Defendant Pace To The Caption Does Not Prejudice Defendants.**

        **1.    The Omission of Defendant Pace's Name From The Caption Is A Technical Defect Properly Cured Through Amendment.**

As explained in Plaintiff's Motion, the proposed Second Amended Complaint seeks to correct an error in the caption by including the name of defendant Peter Pace, who is described in allegations set forth in paragraph 16 of the Amended Complaint (filed March 21, 2007) but who was inadvertently omitted from the caption. *See* Amended Compl. ¶ 16 (Dkt. No. 11). Paragraph 16 of the Amended Complaint describes "Defendant Marine Gen. Peter Pace" as serving as "the Chairman of the Joint Chiefs of Staff since September 2005" and as "the senior uniformed military officer in the chain of command during relevant times September 30, 2005 until November 16, 2006." *Id.*

---

[8] As will be set forth in plaintiffs' opposition to defendants' Motion To Dismiss, *Rasul v. Myers* does not address the unique facts of the present case which include allegations of torture of and other misconduct against two plaintiffs even *after* they were affirmatively determined by CSRTs to be non-enemy combatants. *See* Amended Compl. (Dkt. No. 11) ¶¶ 141-144 and 164-168.

These alleged facts, which accurately specify his name, rank, title, and relevant dates of service, are sufficient to identify defendant Pace as a party against whom claims are being asserted, whether or not his name was included in the caption.[9] As one treatise has explained:

> [T]he caption *is not determinative as to the identity of the parties* to the action or the district court's personal jurisdiction over the defendant or its subject matter jurisdiction. … *If the body of the complaint correctly identifies the party being sued* or if the proper person actually has been served with the summons and complaint, *federal courts generally will allow amendment* under Rule 15 to correct technical defects in the caption when that is thought necessary. This corrective action seems appropriate inasmuch as a defective caption or even its complete absence *is merely a formal error and never should be viewed as a fatal defect, particularly when it can be remedied early in the action.*

5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3D § 1321 (1990) (emphasis added); *see also Schopler v. Bliss,* 903 F.2d 1373, 1376 n.1 (11th Cir. 1990) (citing WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3D § 1321 with approval)); *Barsten v. Dep't of Interior,* 896 F.2d 422, 423 (9th Cir. 1990) (noting that improper naming of defendant in caption is not fatal if allegations made in body of complaint indicate party was intended to be named as a defendant). With the proposed Second Amended Complaint, plaintiffs merely intend to remedy early in this action the omission of Pace's name from the caption; he was already added as a defendant on March 21, 2007 when plaintiffs filed the Amended Complaint with allegations describing him in paragraph 16.

---

[9] Although paragraph 16 also refers to "Defendant Myers," it is apparent from the context of the Amended Complaint, where allegations regarding "Defendant Air Force Gen. Richard Myers" appear in the preceding paragraph 15, that the reference to defendant "Myers" rather than defendant "Pace" in paragraph 16 is a typographical error. *See* Amended Compl. (Dkt. No. 11).

## 2. The Statute of Limitations Does Not Preclude The Current Proposed Amendment.

Even if the Second Amended Complaint were deemed to newly add defendant Pace to this action at this time, the statute of limitations would not preclude the proposed amendments, as urged by the defendants. Defendants rely on the *Bivens* claims of plaintiffs Celikgogus and Sen against defendant Pace in his individual capacity as example of the claims that would be barred. But these claims are not even asserted by these plaintiffs against defendant Pace because he was not Chairman of the Joint Chiefs of Staff at the relevant time Celikgogus and Sen were detained at Guantánamo.[10] Thus, whether or not the statute of limitations would bar such hypothetical claims is irrelevant to whether plaintiffs' proposed amendments should be allowed.

In any case, the statute of limitations also would not be a bar to the proposed amendments because the Amended Complaint filed on March 21, 2007 (which added Defendant Pace) properly relates back to the date the original complaint was filed (November 16, 2006) pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) (in the form operative on March 21, 2007) provides in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when…
>
> > (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2)[11] is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the

---

[10] Plaintiffs Celikgogus and Sen were both released from Guantánamo in November 2003, whereas defendant Pace did not become Chairman of the Joint Chiefs of Staff until September 2005. *See* Amended Compl. ¶¶ 16, 75, and 96.

[11] Rule 15(c)(2), in the version operative on March 21, 2007, requires that the claim asserted in the amended pleading arise out of the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

> action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against that party.
>
> *The delivery or mailing of process to the United States Attorney*, or United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, *satisfies the requirement of subparagraphs (A) and (B)* of this paragraph (3) *with respect to the United States or any agency or officer thereof to be brought into the action as a defendant*.

*Id.* (emphasis added).  Accordingly, the March 21, 2007 amendment adding defendant Pace relates back to November 21, 2006 (the date the original Complaint was filed) because the summons and Amended Complaint were delivered to the United States Attorney's office in satisfaction of the requirements for bringing in an officer of the United States into an action under Rule 15(c)(3)(A) and (B).[12]

Because the amendment adding defendant Pace to this action relates back to the date the original Complaint was filed, the statute of limitations does not operate to preclude any of plaintiffs' claims.  Moreover, as defendants themselves concede, "Should the Court decide, however, to grant Plaintiffs' motion, General Pace would still be entitled to all the same defenses to Plaintiffs' claims that have already been raised in Defendants' Motion to Dismiss…." *Id.* at 8.  Defendant Pace thus will have sufficient opportunity to present whatever defenses he wishes to assert, including one based on the statute of limitations.  These proposed amendments only seek to correct technical errors for purposes of clarifying the record.

---

[12] Specifically, the Amended Complaint was sent to the United States Attorney for the District of Columbia and the Attorney General's office, as well as the United States Department of Justice, Civil Division, Torts Branch.  *See* Summons to Amended Complaint.

11

### III. CONCLUSION

     For all the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs' Motion For Leave To Amend Complaint to correct administrative errors regarding the naming of certain defendants.

Dated:  March 31, 2008

                                  Respectfully submitted,

                                  /s/ Shayana Kadidal
                                  Shayana Kadidal [D.C. Bar No. 454248]
                                  Carolyn Patty Blum
                                  Michael Ratner
                                  CENTER FOR CONSTITUTIONAL RIGHTS
                                  666 Broadway, 7th Floor
                                  New York, NY  10012
                                  Tel:  (212) 614-6438
                                  Fax:  (212) 614 6499


                                  /s/ Robert A. Rosenfeld
                                  Robert A. Rosenfeld [CA Bar No. 86970]
                                   (admitted *pro hac vice*)
                                  Neil A. F. Popovic [CA Bar No. 132403]
                                  (admitted *pro hac vice*)
                                  Russell P. Cohen [CA Bar No. 213105]
                                  (*pro hac vice* pending)
                                  HELLER EHRMAN LLP
                                  333 Bush Street
                                  San Francisco, CA  94104
                                  Tel:  (415) 772-6000
                                  Fax:  (415) 772-6264

                                  /s/ Kit A. Pierson
                                  Kit A. Pierson [D.C. Bar No. 398123]
                                  Heller Ehrman LLP
                                  1717 Rhode Island Avenue, NW
                                  Washington, DC  20036
                                  Tel: (202) 912-2000
                                  Fax: (202) 912-2020